[No. 9914. Department Two. February 9, 1912.]

CURT AKERS *et al.*, *Respondents*, v. W. H. LORD *et al.*, *Appellants*, E. S. WRIGHT, *Respondent.*[1]

APPEAL—RIGHT TO ALLEGE ERROR—COPARTY NOT APPEALING. A plaintiff, dismissed from a case with prejudice, cannot have error thereon reviewed on an appeal by defendants, where the record fails to disclose that he took any appeal.

LOGS AND LOGGING—LIENS—ON LUMBER—TIME FOR FILING—STATUTES—CONSTRUCTION. Under Rem. & Bal. Code, § 1163, giving a logger's lien upon lumber while the same remains at the mill where it is manufactured or while in its possession and control, no lien can be claimed after the mill company had delivered it to a railway company, about a mile from the mill, the railway having taken possession and control of it.

LOGS AND LOGGING—LIENS—ELOIGNMENT—PRIOR TO FILING LIEN. Under Rem. & Bal. Code, § 1181, as to the eloignment of logs and timber "upon which there is a lien," there can be no eloignment prior to the filing of the lien.

SAME—PARTIES ENTITLED—COOK OR BOARDING-HOUSE KEEPER. Under the statute providing that a cook in a logging camp shall be regarded as a person who assists in obtaining the timber, one who runs a boarding house, furnishing all supplies for meals at so much per week to be paid for out of wages of the men, is not entitled to a lien as cook.

PARTNERSHIP—EVIDENCE—ADMISSIONS OF PARTNERSHIP. Upon an issue as to the establishment of a partnership, the admission of one partner is not evidence as against the other.

[1]Reported in 121 Pac. 51.

LOGS AND LOGGING—LIENS—ELOIGNMENT—REMEDIES OF OWNER—
SUBROGATION. In an action to foreclose logger's liens, where the
liability of the owner of the timber depends upon his own wrongful
act in eloigning the same, he cannot claim the right to subrogation
against the contractor who failed to pay the labor bills of the lien
claimants; since subrogation depends upon equity.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered May 31, 1911, upon findings
in favor of the plaintiffs, in actions to foreclose loggers'
liens. Affirmed in part and reversed in part.

*Tucker & Hyland,* for appellants.

*Robert A. Welch (Winter S. Martin,* of counsel), for re-
spondents Akers *et al.*

*Jno. Mills Day,* for respondents Krakenberger.

MORRIS, J.—Consolidated actions to foreclose loggers'
liens. W. H. Lord, as the owner of certain timber land,
contracted with E. S. Wright to log the same and deliver
the logs to the mill of the Two Rivers Lumber Company,
near Tolt. Wright employed Akers and eight other re-
spondents in his logging operations, and not having re-
ceived their due, they filed liens on the logs and lumber at
the mill and upon other lumber lying upon the right of way
of the Chicago, Milwaukee & Puget Sound Railway Com-
pany, about a mile from the mill. These liens were all sus-
tained, except the one of Bernard Krakenberger, whose suit
was dismissed by the lower court. We are unable to deter-
mine the reason for such dismissal, as no finding is made in
relation to Krakenberger's lien; nor is he mentioned until
in the decree when he is dismissed with prejudice. He files
a brief in this court in which he assigns the dismissal as
error; but inasmuch as this record does not disclose that he
has taken any appeal from such decree, it must be regarded
as final as to him, and further attention will not be given his
claim of error. As to the other claimants, the court found

that the logs and lumber had been eloigned by appellants, and granted personal judgment against them.

This decree of eloignment furnishes the principal assignment of error. It will therefore be necessary to refer to the facts upon which it is claimed by respondents, and denied by appellants. Respondents commenced work for Wright about October 26, and quit December 6, 1910. The liens were filed December 10, with the exception of three, which were filed December 12, December 14, and January 4. There is some dispute as to the amount of lumber delivered to the railway, appellants fixing the amount at 45,000, while respondents put it at 180,000. It appears, however, that, whatever the amount was, the mill had been delivering to the railway company since the preceding July, and that the same teams used in hauling the logs to the mill were used in hauling the lumber from the mill to the railway. The men and teams quit work on December 6, and the mill closed down on December 14 or 15. The record discloses but one load delivered to the railway company subsequent to the filing of the liens on December 10. It is also apparent that, if the same men and teams hauled both the logs and the lumber, the lumber must have been delivered prior to December 6, when the men and teams quit work. No lien was claimed upon the logs or the lumber prior to December 10. It is manifest no lien could be enforced against the lumber after it had been delivered to the railway company and passed beyond the possession and control of appellants. This court has extended the provisions of Rem. & Bal. Code, § 1163, providing a lien upon lumber while the same remains at the mill where it was manufactured, or in the possession or under the control of the manufacturer, to the logger who assists in getting out the logs from which the lumber was manufactured, and who files his lien under § 1162. But the lien cannot be extended beyond the possession and control of the mill company. When, therefore, the mill company delivered this lumber to the railway company upon its right of way, it lost its pos-

session and control thereof, and no lien could be subsequently
filed against it. *Robins v. Paulson*, 30 Wash. 459, 70 Pac.
1113; *O'Connor v. Burnham*, 49 Wash. 443, 95 Pac. 1013.

These liens were filed December 10. Any eloignment af-
fecting them must have taken place subsequent to that date.
There is not a particle of evidence in this record that it did,
in so far as the lumber delivered to the railway company is
concerned. The lower court seems to have been of the opin-
ion that the liens could be sustained so long as the lumber
was capable of identification, and that any attempt upon the
part of the mill owner to change the identification would be
an eloignment. The statute, however, makes "possession
and control" the foundation of the lien upon the manufactured
product, and not identification; and when the mill man loses
his possession and control, the lien claimant loses his lien.

Neither could there be any eloignment prior to the filing
of the lien, as under Rem. & Bal. Code, § 1181, there can be
no eloignment except of logs and timber "upon which there
is a lien." Hence, no eloignment could have taken place
prior to December 10. Taking the most favorable construc-
tion of the evidence, we can only find that, at the time the
liens were filed, there were 40,000 feet of logs at the mill and
60,000 feet of lumber. The mill ran until December 15.
The only evidence of any delivery to the railway company
subsequent to December 10 is that of Lord, who says, in re-
sponse to a question of respondents' counsel, that he delivered
lumber to the railway company subsequent to December 10.
No attempt is made to follow up this testimony by showing,
by this witness or any other, how much was delivered, except
that Dimmick, one of the claimants, says Lord delivered one
load subsequent to the filing of the liens. We are, therefore,
because of a lack of evidence, brought back to the logs and
lumber at the mill at the time of the filing of the liens, as the
only lienable product upon which these liens could have been
enforced, and upon which a finding of eloignment can be sus-
tained. The highest value given to the logs is six dollars per

thousand, which would amount to $240 for the 40,000 feet.
The only valuation we can find of the lumber is seven dollars
per thousand, which would give us $420 as the value of the
lumber, and $660 as the total value of the logs and lumber
eloigned, and the greatest amount in which judgment could
have been entered for the eloignment.

The court below found that the eloignment took place on
or about December 15, and that thereafter the mill company
delivered 180,000 feet of lumber to the railway company.
The only evidence of delivery of this 180,000 is that it com-
menced back in July, and that so far as these lienors are con-
cerned, it was made by the men and teams which quit work on
December 6, four days before any lien was filed.  The only
evidence fixing December 15 as a date is that on that day the
mill stopped running.  Notwithstanding this finding, the
court below sustained the lien of John Krakenberger, which
was not filed until January 4, 1911, which was too late, even
under the court's finding, to sustain any lien or eloignment
as to him.

Among the liens sustained was that of John Dimmick and
wife, who claim as cooks.  The evidence shows, that these
claimants made an agreement with Wright, whereby they fur-
nished meals to the men at $5.25, per week, to be paid by
Wright out of the money earned by the men; that they were
to furnish all of their supplies, and pay all the bills for such
supplies.  The statute provides: "The cook in a logging
camp shall be regarded as a person who assists in obtaining
or securing the timber herein mentioned."  The only lien
recognized by this statute is one for labor performed and
services rendered.  The cook, to the extent that he renders
service as a cook, is entitled to a lien; but when he steps out-
side of his cookhouse and ceases to labor for wages, and be-
comes a boarding-house keeper, furnishing all the material
and supplies, he is no longer within the purview of the statute,
any more than any other laborer who furnishes necessary
chains, ropes, tackle, or rigging for use in the logging opera-

tion, can claim a lien for the cost of such material. The statute limits the lien to labor performed and service rendered, and eliminates supplies and materials furnished, however necessary they may have been to the work engaged in.

In *Bradford v. Underwood Lumber Co.*, 80 Wis. 50, 48 N. W. 1105, it was held that, under a statute giving a lien for services as cook in a logging camp, one who furnished meals to the men at one dollar per day was not entitled to a lien as cook, the court saying:

"So far as the right to a lien is concerned, it [the statute] placed a cook upon precisely the same footing as the other employees performing work upon logs or timber. That is to say, any person who cooks food for men employed in doing any labor upon logs or timber shall have the same right to a lien for his services as such men have for whom the food is cooked. . . . But the section must be restricted to the services of the cook, and cannot be extended so as to embrace a claim for board, which includes the raw materials used in preparing the food. The lien is only given to one who cooks the food for those employed to do work upon the timber, where the provisions are furnished by the employer."

In *Dolan v. Cain*, 59 Wash. 259, 109 Pac. 1009, it was sought to enforce a lien by one in the identical situation of Dimmick. The lien was denied in the lower court, but judgment entered against the logging contractor. Only the last feature of the judgment was sought to be reviewed here, it being conceded that the judgment of the lower court in denying the lien was right. The case is only valuable as a concession here made upon the point now involved. We, therefore, find error in sustaining the Dimmick lien.

There is some claim in appellants' brief that Bernard Krakenberger was a partner of Wright. There is no evidence in the record upon which such an assumption can be based. The only evidence is admissions of Wright, to various dealers with whom he sought credit, that Krakenberger was interested with him. Such declarations or admissions by Wright were not competent nor admissible as against Krakenberger. When a partnership is admitted or established, the

declarations of one partner will to a large extent bind the other partners, but where the issue is the establishment of a partnership between two men, the relation cannot be established against one by the admission of the other.

Appellants also claim the right of subrogation against Wright and Bernard Krakenberger, or against Wright alone, if it should be held the partnership relation was not established. Subrogation is a doctrine of purely equitable origin and nature, and its operation is always controlled by equitable principles. The only liability enforceable against appellants grows out of their own wrongful act, the eloignment of the logs and lumber subject to respondents' liens. They are not, therefore, in a position to claim any equitable relief as against any one, being themselves wrongdoers. The plea of subrogation is therefore denied.

One other question is discussed in the briefs—the right of respondent Wiley to maintain a lien for hauling lumber. Under the conclusion we have reached as to the extent of the liability of appellants, the decision of this point is no longer material to appellants, as its decision in no way affects the liability to which they are held.

The judgment as against appellants is reversed as to respondents Dimmick and John Krakenberger. The right of lien is sustained as to the other respondents whose liens were established by the judgment, to the extent herein indicated. The appellants are found guilty of an eloignment of 40,000 feet of logs and 60,000 feet of lumber, of the total value of $660, in which amount the liens established must pro rate. The record here does not disclose the situation as to Wright, and we cannot determine whether the judgment runs against him or not. If so, it is in no manner disturbed by our findings, and will as to all respondents remain as entered below. The cause is remanded to the court below for further proceedings in accordance with the views here expressed. Appellants will recover costs of this court.

MOUNT and ELLIS, JJ., concur.