[No. 14531. Department One. April 29, 1918.]

CAMERON DOUGLASS *et al., Appellants,* v. WOODBURY
LUMBER COMPANY, *Respondent.*[1]

LOGS AND LOGGING — LIEN — BONA FIDE PURCHASER OF LUMBER—
LIABILITY—STATUTES. Rem. Code, § 1177, providing that the pur-
chaser of lumber "liened upon" within the thirty days given for the
filing of labor liens, in order to be a *bona fide* owner, must pay full
value and apply the purchase money to the payment of such *bona
fide* claims as are entitled to liens, has no application to lumber sold
by the manufacturer away from the mill and passing entirely from
his control before any liens are filed; since it applies only to prop-
erty "liened upon," and by Id., § 1163, the laborer's right of lien is
limited to lumber while the same remains at the mill where manu-
factured, or in the possession and control of the manufacturer.

SAME—LIEN—PURCHASER—LIABILITY FOR ELOIGNMENT—STATUTES.
A purchaser of lumber within the thirty days limited to laborers for
the filing of liens cannot be held liable under Rem. Code, § 1181, as
for an eloignment of lumber "upon which there is a lien," where
he took it prior to the filing of any lien, and obtained complete pos-
session away from the mill so that it was not subject to a lien.

Appeal from a judgment of the superior court for
Okanogan county, Frater, J., entered May 24, 1917,
upon granting a nonsuit, dismissing an action by lien
claimants to recover a money judgment against the pur-
chaser of lumber. Affirmed.

*J. Henry Smith* and *Peter McPherson,* for appel-
lants.

*A. J. O'Connor* and *Kerr & McCord,* for respondent.

PARKER, J.—The plaintiffs seek recovery of a money
judgment against the defendant Woodbury Lumber
Company, in the sum of $2,142, being the amount of
the purchase price of lumber sold and delivered by
Edward Johnson, the manufacturer thereof, to the de-
fendant, upon which lumber the plaintiffs claim they
were entitled to liens aggregating more than that sum

[1]Reported in 172 Pac. 906.

for labor performed by them for Johnson in the manufacture of the lumber. Trial in the superior court for Okanogan county, sitting without a jury, resulted in judgment in favor of the defendant, denying to the plaintiffs the relief prayed for, from which they have appealed to this court.

The facts may be summarized as follows: On June 26, 1915, Edward Johnson was, and for a considerable time prior thereto had been, the owner and operator of a sawmill in Okanogan county. On that day, Johnson sold and delivered to respondent lumber company, in the usual course of business, lumber which had been manufactured by him at his mill, of the value and for the agreed price of $2,142. The lumber was delivered by Johnson to respondent at the town of Brewster, in Okanogan county, which is some ten miles distant from the mill, which lumber thereupon passed entirely out of the possession and control of Johnson to respondent. On and prior to June 26, 1915, appellants were employed by Johnson in the operation of the mill, and while so employed performed labor in the manufacture of this and other lumber. On that day appellants ceased to perform such labor, at which time there was due them from Johnson for labor so performed, in the aggregate, the sum of $2,738. Thereafter, and after the sale and delivery of the lumber by Johnson to respondent, and within thirty days after appellants had ceased to perform such labor, they:

"Filed in the office of the county auditor of said county, their several notices of lien upon and against all of said lumber, boxes and box materials and other products of said sawmill and box factory that was then remaining in or about the same, or within the possession or under the control of the said Edward Johnson."

This quoted language is from appellants' complaint. The lien notices are not in the record before us. There-

after, and within the time prescribed by statute, they commenced an action in the superior court for Okanogan county, seeking foreclosure of their several liens as against Johnson, respondent not being a party to that action, in which action judgment of foreclosure was accordingly rendered against Johnson as prayed for, together with a personal judgment against him in favor of the several appellants aggregating the sum of $2,738. Thereafter, under an execution and order of sale issued upon the judgment of foreclosure:

"All of the said property of the said Edward Johnson, so liened upon, was by the sheriff of said county, duly and regularly sold, as provided by law and the proceeds of such sale were duly applied toward the satisfaction of plaintiffs' several judgments and those of other lien claimants who were entitled thereto, *pro rata,* according to the amount of their several judgments, and after deducting the amount of the proceeds of said sale and any and all other payments that have been made on account of said judgments, there remains due and owing thereon by the said Edward Johnson to these plaintiffs the sum of $2,575."

This quoted language is also from appellants' complaint. Thereafter, in June, 1916, appellants commenced this action, seeking recovery of the $2,142 purchase price of the lumber sold and delivered by Johnson to respondent, apparently upon the theory that their lien rights extended to that lumber and that respondent was liable to them for the value thereof. This statement of the facts is as favorable to appellants as the record will admit of. Indeed, there are other facts appearing in the record which seem to render the case as a whole less favorable to appellants, but our view of the law renders it unnecessary to notice other facts here.

The provisions of our statutes relating to liens upon logs and lumber for labor performed thereon which it

seems necessary for us to notice here, referring to sections of Remington's Code, are as follows:    Section 1162 reads in part as follows:

"Every person performing labor upon, or who shall assist in obtaining or securing sawlogs, spars, piles, cordwood, shingle-bolts, or other timber . . . shall have a lien upon the same for the work. . . ."

This section does not in terms limit the lien rights of loggers to logs while in the possession and control of the owner thereof for whom the labor was performed. Section 1163 reads in part as follows:

"Every person performing work or labor or assisting in manufacturing sawlogs and other timber into lumber and shingles, has a lien upon such lumber *while the same remains at the mill where it was manufactured, or in the possession or under the control of the manufacturer.* . . ."

We have italicized the portion of this section to be particularly noticed as showing the difference in the lien rights of loggers and those performing labor in the manufacture of lumber.    Section 1177 reads as follows:

"It shall be conclusively presumed by the court that a party purchasing the property liened upon within thirty days given herein to claimants wherein to file their liens, is not an innocent third party, nor that he has become a bona fide owner of the property liened upon, unless it shall appear that he has paid full value for the property, and has seen that the purchase money of the said property has been applied to the payment of such bona fide claims as are entitled to liens upon the said property under the provisions of this chapter, according to the priorities herein established."

Section 1181 reads as follows:

"Any person who shall eloign, injure or destroy, or who shall render difficult, uncertain or impossible of identification any sawlogs, spars, piles, shingles or other timber upon which there is a lien as herein provided, without the express consent of the person en-

titled to such lien, shall be liable to the lienholder for the damages to the amount secured by his lien, and it being shown to the court in the civil action to enforce said lien, it shall be the duty of the court to enter a personal judgment for the amount in such action against the said person, provided he be a party to such action, or the damages may be recovered by a civil action against such person."

The theory upon which recovery is sought in this action against respondent seems to be that of eloignment on the part of respondent, rendering it liable under §§ 1177 and 1181, above quoted. It should be remembered in this connection that respondent was not a party to the lien foreclosure action, nor did the lien notices or the foreclosure judgment assume to claim or establish any lien against the lumber sold and delivered by Johnson to respondent before the filing of the lien notices. Counsel for appellants rely particularly upon the provisions of § 1177, above quoted. That section, however, does not give a right of action, but only prescribes a rule of evidence touching the good faith of the party purchasing "property liened upon," and it seems to us cannot, in any event, have reference to the purchase of property other than that upon which there is a lien right which can follow the property after it has passed from the possession and control of the owner. This rule would seem applicable to the foreclosure of loggers' liens under § 1162, above quoted from, since that section contains no limit, in terms, as to the lien right there given as the same might be affected by the location or possession of the logs. This rule would also seem applicable in an action claiming recovery under § 1181, above quoted, relating to eloignment. The weakness of counsel's contention lies in the fact that the only liens appellants were entitled to assert were liens upon lumber "while the same remains at the mill where it was manufactured, or in the pos-

session or under the control of the manufacturer." Manifestly, whatever lien rights appellants had upon the lumber sold and delivered by Johnson to respondent ceased when that sale and delivery were actually made, which, as we have seen, was before appellants filed their lien notices in the office of the county auditor. It is not claimed that this sale and delivery of the lumber were fraudulent on the part of either Johnson or the respondent, in that the transaction was had with any intent on the part of either to defraud appellants.

It seems to us that our decision in *Akers v. Lord,* 67 Wash. 179, 121 Pac. 51, is decisive of this question in favor of respondent. While that case involved claims of liens made by loggers, the liens were claimed under § 1163, above quoted, because the logs upon which the labor had been performed had gone to a mill and been manufactured into lumber, the lumber thereafter being sold and its possession and control having passed from the mill owner, the manufacturer, to a third party before the filing of the lien claims in the office of the county auditor. Disposing of the lien claims, in so far as this manufactured and sold lumber was concerned, Judge Morris, speaking for this court, said:

"It is manifest no lien could be enforced against the lumber after it had been delivered to the railway company and passed beyond the possession and control of appellants. This court has extended the provisions of Rem. & Bal. Code, § 1163, providing a lien upon lumber while the same remains at the mill where it was manufactured, or in the possession or under the control of the manufacturer, to the logger who assists in getting out the logs from which the lumber was manufactured, and who files his lien under § 1162. But the lien cannot be extended beyond the possession and control of the mill company. When, therefore, the mill company delivered this lumber to the railway company upon its right of way, it lost its possession and control thereof,

and no lien could be subsequently filed against it. *Robins v. Paulson,* 30 Wash. 459, 70 Pac. 1113; *O'Connor v. Burnham,* 49 Wash. 443, 95 Pac. 1013.

"These liens were filed December 10. Any eloignment affecting them must have taken place subsequent to that date. There is not a particle of evidence in this record that it did, in so far as the lumber delivered to the railway is concerned. The lower court seems to have been of the opinion that the liens could be sustained so long as the lumber was capable of identification, and that any attempt on the part of the mill owner to change the identification would be an eloignment. The statute, however, makes "possession and control" the foundation of the lien upon the manufactured product, and not identification; and when the mill man loses his possession and control, the lien claimant loses his lien."

It may be said that this is the first positive holding of this court upon the question here presented. It appears, however, that this court has, on former occasions, expressed views quite in harmony with this holding, though possibly not wholly necessary to a decision of the question directly involved. See *Campbell v. Sterling Mfg. Co.,* 11 Wash. 204, 39 Pac. 451; *Munroe v. Sedro Lum. & Shingle Co.,* 16 Wash. 694, 48 Pac. 405; *Robins v. Paulson,* 30 Wash. 459, 70 Pac. 1113; *Forsberg v. Lundgren,* 64 Wash. 427, 117 Pac. 244.

Some other questions are presented in the briefs, but since our conclusion upon the facts, even as claimed by appellants, is that there can in no event be any recovery by them as against respondent, these questions need not be here noticed.

The judgment is affirmed.

ELLIS, C. J., FULLERTON, MAIN, and WEBSTER, JJ., concur.