[No. 18374. Department Two. May 5, 1924.]

T. H. ADAMS, *Respondent*, v. J. R. HARVEY, *Appellant*.[1]

LOGS AND LOGGING (22, 25)—LIENS—PERSONS ENTITLED—STATUTES—CONSTRUCTION. Rem. Comp. Stat., § 1164, giving a stumpage lien to owners of land who permit another to cut thereon "sawlogs, spars, piles or other timber," authorizes an owner's lien upon ties manufactured out of logs taken from his lands within the time allowed for filing his stumpage lien; in view of a similar construction of logger's liens under Id., § 1162.

SAME (25)—LIEN—PERSONS ENTITLED—TIME FOR FILING—STATUTES. While the logger's and stumpage lien sections of the statute (Rem. Comp. Stat., §§ 1162, 1164) are silent concerning the filing of the lien while the product is in the possession or control of the mill, the provision of the section for a manufacturer's lien (Id., § 1163) in that regard must be read into them to make workable the decisions extending logger's liens to the product of the mill; and thereunder a stumpage lien upon ties in a stream is timely, where they were still in the possession or under the control of the mill, although they were in a drive that had actually left the mill.

SAME (37)—RIGHT TO LIEN—WAIVER. A stumpage lien is not waived by the stumpage contract in requiring the net proceeds to be paid on the purchase price, there being no express or specific waiver or other provisions from which it could be clearly understood.

[1]Reported in 225 Pac. 407.

SAME (24)—LIEN—LIABILITY—RECEIVERS. A stumpage lien, may be enforced against a receiver who is doing business as a private person.

SAME (34)—LIEN—AMOUNT AND EXTENT—LIEN ON PART OF LOGS —ELOIGNMENT. As a stumpage lien may be enforced against part of the product, an owner having filed a lien within the time allowed, may recover for their eloignment although part of them were removed before the lien was filed.

SAME (22)—ELOIGNMENT—PROPERTY SUBJECT—STATUTES. Under the eloignment statute providing for the recovery in the event of an eloignment of "saw logs, spars, piles, or other timber," ties are subject to eloignment.

SAME (48)—COSTS—ATTORNEY'S FEES—LIABILITY OF ELOIGNER. There is no authority for the allowance of an attorney's fee upon a judgment for the eloignment of timber products, where relief by way of foreclosure of the liens was abandoned.

Appeal from a judgment of the superior court for Clark county, Kirby, J., entered July 13, 1923, in favor of the plaintiff, in an action for damages for eloignment of railroad ties, tried to the court. Modified.

*W. W. McCredie* and *John Wilkinson* (*John Wilkinson,* of counsel), for appellant.

*McMaster, Hall & Schaefer,* for respondent.

BRIDGES, J.—This is a suit for eloignment of certain railroad ties upon which a stumpage lien was claimed.

At all the times herein mentioned, one Plamondon was the receiver of the Lewis River Tie Company, which owned and operated a sawmill on the Lewis river, in Clarke county. On April 12, 1920, he and the plaintiff, Adams, entered into a written contract whereby the former agreed to manufacture and sell, and the latter agreed to purchase, 35,000 railroad ties, to be delivered f. o. b. at the town of Ridgefield. On the same day that the plaintiff purchased these 35,000 ties, he made a written agreement with the defendant, Harvey, who was a tie broker living in Portland, Oregon,

for the sale to the latter of the identical 35,000 ties bought from the receiver. Delivery under this contract was to be made at the same place as under the receiver's contract. At the time these contracts were made, it was probably understood, at least between the plaintiff Adams and the receiver, that the timber from which these ties would be cut would come from a tract of land known as the Crogster timber. A few days after making the foregoing contracts, and on or about the 21st of April, the receiver and the defendant, Harvey, entered into a contract whereby the receiver was to manufacture and sell, and Harvey was to buy, 100,-000 ties, delivery to be made as in the other contracts. Not long after the execution of this contract, its terms were changed so as to make the amount of the delivery 65,000 instead of 100,000 ties. After the execution of the contracts above mentioned, and on or about the 20th of the following May, the plaintiff Adams and the receiver entered into a written contract whereby the former agreed to sell to the latter what is known as the Weyerhauser timber, then owned by Adams and which was located reasonably close to the receiver's mill. But little, if any, cash was paid, but promissory notes were given for the unpaid portion of the purchase price.

We have, then, to deal with four contracts; the first being the purchase by Adams from the receiver of 35,000 ties; the second being the purchase by Harvey from Adams of these identical ties; the third being the purchase by Harvey from the receiver of 65,000 ties, and the fourth, the purchase by the receiver from Adams of the so-called Weyerhauser timber. It appears that, after these contracts were made, the receiver determined to first cut the Adams timber. He entered into a written contract with one Whitbeck to do the logging. Late in the spring, logging operations were commenced on the Adams land. The logs were

taken to the receiver's mill, where a part of them were cut into ties on the 35,000 tie contract with Adams, and the remainder were cut into ties on the 65,000 tie contract between the receiver and Harvey.

As these ties were cut, they were immediately put into the waters of the Lewis river, where they came in charge of a private driving company, whose business it was to drive them down stream to the boom works of the Lewis River Boom & Logging Company, whose duty it was to catch them, take them from the water and load them on cars at Ridgefield. The plaintiff, Adams, filed a stumpage lien on a great many of these ties after they had been put in the river and were in charge of the driving company, but before they were on board cars. After the filing of the lien, many of these ties came into the possession of the defendant, Harvey, and were by him sent out of the state, and the plaintiff, Adams, instituted this suit against him, seeking damages because of the eloignment of the ties and consequent destruction of his lien.

Although we cannot find it stated in the briefs, we assume that the ties which plaintiff claims defendant eloigned were not of the 35,000 tie lot which he had sold defendant, but a part of the 65,000 tie contract between the receiver and the defendant. The plaintiff could not, of course, complain that the defendant had taken away the very ties which he had bought from plaintiff. He could not be guilty of eloigning those ties. The correctness of our assumption is supported by a statement of the trial court in his memorandum opinion as follows: "Adams is not claiming, as I understand the evidence, any stumpage on the 35,000 ties which he contracted to buy and re-sell to Harvey. He is only claiming his stumpage on ties which were sold by Plamondon (the receiver) to Harvey (being

the 60,000 tie cut), and which Harvey actually received.''

While these facts are somewhat complicated, we see no way to avoid a recitation of them. For the purpose of discussing the legal question involved, it seems to us that the essential facts may be boiled down to these: that Adams claims a stumpage lien on railroad ties cut by the receiver at his mill from Adams' timber, which ties the receiver sold and delivered to Harvey, who removed them from the state. The trial court gave judgment against the defendant for something over $7,000, and he has appealed.

(1) It will be remembered that respondent's stumpage lien was not on the saw logs cut from his land, but on the ties into which they had been sawed at the receiver's mill, away from and disconnected with the actual logging operations. Appellant contends that a stumpage lien can only be on the logs, piles, spars or other timber, and cannot be on the lumber, ties, and other articles manufactured out of such logs, piles, spars and other timber. On the other hand, the respondent contends that, both under our statutes and the decisions of this court, the logs being sawed into ties before the time for filing his stumpage lien had expired, he was authorized to follow the logs into the ties and claim a lien upon them for his stumpage. The validity of the lien is of vital importance because our statute provides for damages on account of eloigning only when there is a valid lien on the property eloigned. Rem. Comp. Stat., § 1181 [P. C. § 9698]. Under our statutes, so far as timber products are concerned, we have three general kinds of lien; first, what is ordinarily understood as the logger's lien; second, what is commonly understood as the lien of the laborer who manufactures the logs or other timber products into lumber, ties or other manufactured articles; and third,

the stumpage lien. While we are here only directly concerned with the stumpage lien, yet, because of our previous decisions, it will be necessary to consider the other liens. Such being the fact, we may as well at once have them before us.

Section 1162, Rem. Comp. Stat. [P. C. § 9679], provides that:

"Every person performing labor upon, or who shall assist in obtaining or securing, saw logs, spars, piles, cordwood, shingle bolts or other timber . . . shall have a lien upon the same for the work or labor done upon . . . the particular saw logs, spars, cordwood, shingle bolts or other timber in said claim of lien described, whether such work, labor or services was done, rendered or performed at the instance of the owner of the same or his agent."

Section 1163, Rem. Comp. Stat. [P. C. § 9680], provides that:

"Every person performing work or labor or assisting in manufacturing sawlogs and other timber into lumber and shingles, has a lien upon such lumber while the same remains at the mill where it was manufactured, or in the possession or under the control of the manufacturer, whether such work or labor was done at the instance of the owner of such logs or his agent or any contractor or subcontractor of such owner. The term lumber, as used in this chapter, shall be held and be construed to mean all logs or other timber sawed or split for use, including beams, joists, planks, boards, shingles, lathes, staves, hoops and every article of whatsoever nature or description manufactured from sawlogs or other timber."

Section 1164, Rem. Comp. Stat. [P. C. § 9681], provides that:

"Any person who shall permit another to go upon his timber land and cut thereon sawlogs, spars, piles or other timber, has a lien upon the same for the price agreed to be paid for such privilege, or for the price

such privilege would be reasonably worth in case there was no express agreement fixing the price.''

Construing alone the stumpage lien statute, it would seem that that lien can be only on the products which are commonly manufactured as part of logging operations and not on lumber, shingles, ties or other products separately manufactured out of the product of the logging operation. The statute plainly says that the lien shall be upon ''saw logs, spars, piles or other timber.'' The body of these three statutes became the law of this state in 1877 and only minor changes have been made in somewhat recent years. When they were passed, the line of demarcation between logging operations and mill operations was more clear than it is now. Then there were no logging railroads, or, if any, very few. All logging operations were on or near tidewater. The logs and other product of the logging operations were put in the water, and after a delay of some weeks or months arrived at the mill, where they were to be manufactured into lumber and other finished products. The view of the writer of this opinion is that it was the legislative intent that the logger should have a lien on the thing which he created, and the manufacturer should have a lien on the thing he created, and that these two liens should be distinguished one from the other and kept entirely separate. Under the old operations there was plenty of opportunity for the logger to file his lien before the logs had been manufactured into lumber, and time enough within which the manufacturer should file his lien before the tardy means of conveyance had taken the lumber away from the mill where manufactured. Such, apparently, was the original view of this court, for in the case of *Winsor v. Johnson,* 5 Wash. 429, 32 Pac. 215, discussing this question, we said:

"We feel constrained by our statutes to hold that the lien upon saw logs cannot be so extended as to reach the lumber manufactured therefrom. . . . If it is held that this section applied to labor in securing the logs, and also to that done in transforming them into lumber, much uncertainty would arise in the determination of the respective rights of the lien claimants, and the difficulty of enforcing the statute, which at best is sufficiently great, would be greatly multiplied."

But in the later case of *Campbell v. Sterling Mfg. Co.,* 11 Wash. 204, 39 Pac. 451, we took a contrary view, saying that:

"We think it too narrow a construction of this act [logger's act] to hold that the lien should have been filed against the shingle bolts instead of against the manufactured article, so long as the shingles were under the control of the manufacturer."

And again, in *Munroe v. Sedro Lumber & Shingle Co.,* 16 Wash. 694, 48 Pac. 405, we held that laborers getting out bolts for one company were entitled to liens on the shingles manufactured therefrom by another company, so long as they remained in the possession, or under the control, of the latter manufacturer. To the same effect see *Robins v. Paulson,* 30 Wash. 459, 70 Pac. 1113, and *O'Connor v. Burnham,* 49 Wash. 443, 95 Pac. 1013.

In *Akers v. Lord,* 67 Wash. 179, 121 Pac. 51, we extended the statute providing for a lien upon lumber to a logger who assists in getting out logs from which the lumber is manufactured.

In *Graham v. Gardner,* 45 Wash. 648, 89 Pac. 171, we expressed some ideas contrary to our previous holding and in accord with the earlier case of *Winsor v. Johnson, supra,* for there we said:

"We do not think that any liberal construction which is at the same time reasonable would cause us to hold that one who is engaged in cutting logs in the woods at

a distance from the mill under a contract by which he is to receive so much per thousand feet is an employee of the mill or engaged in performing labor in its operation. Were we to so hold there would be no limit to the number, variety, or character of persons who would claim such liens. . . . Our view is that the sole intention of the legislature was to provide a lien for all employees in and about the mill directly performing the labor in its operation."

From this review of our cases it would seem that it is the doctrine of this court that one who has assisted in securing sawlogs has a right to a lien on the lumber or other products into which the logs may have been made at the mill. The supreme court of Oregon seems to take the same view. *Day v. Green,* 63 Ore. 293, 127 Pac. 682. Were the question an open one in this state the writer of this opinion would strongly favor keeping the logger's lien statute and the manufacturer's lien statute separate and distinct in all respects, holding that one who manufactures logs or other timber products in the woods is not entitled to a lien upon the finished product made by a sawmill.

It is true the previous cases out of this court do not concern the stumpage lien, but it would be illogical to hold that one who secures logs in the woods is entitled to a lien upon the lumber manufactured at the mill, and to hold that the stumpage man is entitled to a lien only upon the logs and not upon the lumber into which those logs are sawed.

We must, therefore, hold that the respondent had a right to file a lien for his stumpage on the ties manufactured at the receiver's mill out of logs taken from the respondent's lands.

(2) Appellant next claims that the respondent's lien was invalid because it was not claimed on the ties while they were at the mill where manufactured, or

while in the possession or under the control of the manufacturer, as provided by § 1163, *supra*.

Respondent contends that the section of the statute which provides for filing a lien on lumber, ties, etc., while at the mill or under the control of the manufacturer has reference only to the lien of one who has labored in manufacturing that product, and has no reference whatever to a stumpage or logger's lien, because those sections are entirely silent upon this question. His argument is that the stumpage lien may be filed at any time so long as the product manufactured from the logs can be identified. Under a proper state of facts, this question would be an exceedingly interesting and troublesome one.

While the logger's and stumpage lien sections of the statute are silent concerning filing the lien while the lumber or ties are still in the possession or under the control of the mill, yet those provisions must be read into them in order to complete and make workable our decisions extending the logger's lien to the product of the mill. If, therefore, respondent's lien was filed while the ties were still in the possession or under the control of the mill, it was filed in due time. We find that respondent's lien was filed while the ties were actually under the control and supervision of the manufacturer, if not in his possession. As above indicated, the mill was on the banks of the Lewis river, and as the ties were manufactured they were placed in the stream and were driven for some distance by the driving concern before they reached Ridgefield, at which point they were to be delivered by the receiver. It was while the ties were in the stream and before they were delivered according to the contract that respondent's lien was filed. Under these circumstances it is plain that, although the ties had actually left the mill, they were still, in one sense at least, in the manufacturer's

possession, and certainly under his control and supervision. The cases of *Douglass v. Woodbury,* 101 Wash. 668, 172 Pac. 906; *Judge v. Bay Mill Co.,* 18 Wash. 269, 51 Pac. 378; and *Akers v. Lord, supra,* cited by the appellant, are not contrary to our conclusion here.

(3) Without following in detail the appellant's argument in this regard, we are of the belief that the lien notice was sufficient upon its face.

(4) It is further insisted that the respondent cannot claim a lien because he has waived it. The argument is based on the following clause in the contract wherein the receiver agreed to purchase of the respondent the so-called Weyerhauser timber: "there shall be applied upon the payment of said purchase price and upon the promissory notes hereinabove set out all sums coming to the said party of the second part (respondent) as the net proceeds or profits of manufacture of said 35,000 pieces of railroad ties, and also all the net proceeds and profits from the manufacture of ties in future operation of the plant until said notes are liquidated in full." In our opinion, there is nothing in this clause which requires us to hold that the respondent intended to waive his statutory stumpage lien. This provision does nothing more than require the net proceeds to be paid on the purchase price. But the receiver was obligated to pay that price, according to the terms of the notes, whether or not there were any profits. In several cases we have held that there was a waiver of the right of lien, but in each instance the waiver was specific and no reasonable doubt could exist as to what was meant. See *Anderson v. Tingley,* 24 Wash. 537, 64 Pac. 747, 85 Am. St. 959. The facts of this case easily come within the doctrine announced in *Maris v. Clevenger,* 29 Wash. 395, 69 Pac. 1089, where we said:

"It is true that provision is made for the stumpage money being left for the respondent at the mill where the logs may be sold. But respondent did not agree not to look for his pay until the logs were sold. . . . There is nothing in the contract now under consideration. . . . negativing the intention of the respondent to claim a lien, . . ."

We would not be justified in holding that a claim of lien has been waived unless we can say that it was clearly understood between the parties that such should be the case.

(5) It is next claimed that a lien cannot be created and enforced against a receiver. It must be remembered that in this case the receiver was doing business like anyone else, and there is no reason why he should not subject his property to liens in the same manner as if he were dealing as a private person. But, in addition to this, we do not see that this question is involved in this case. There is no effort here to enforce a lien against the receiver. The action is against the appellant, who purchased the ties from the receiver. Respondent had a right, under the statute, to protect himself against all purchasers of the ties into which the logs were sawed. The only way he could do that would be to file his lien as provided by statute. Otherwise he would not be in position to claim on account of eloignment.

(6) Under this head appellant argues extensively that the respondent, by his conduct, is estopped from claiming a lien. Without presenting this discussion in detail, suffice it to say that a reading of the testimony fails to convince us of any such estoppel.

(7) It is claimed that the judgment is, in any event, too large. We understand the contention to be that the judgment was allowed on 1,771,423 feet of timber cut from respondent's land at a certain stumpage rate;

425,836 feet of that amount of timber (in ties) had been removed by the appellant from the state of Washington before the lien was filed. Respondent contends that, while a part of these ties were removed before the claim was actually filed, yet they were removed within the time within which the respondent had a right to file his lien. The argument is somewhat persuasive, but § 1181, Rem. Comp. Stat. [P. C. § 9698], with reference to eloignment, provides that "any person who shall eloign, . . . any sawlogs, spars, piles, shingles or other timber upon which there is a lien as herein provided, . . . shall be liable. . . ." In *Akers v. Lord, supra,* and *Douglass v. Woodbury, supra,* we held that there cannot be any eloignment before the filing of a lien. But it does not follow from this that the respondent may not recover his stumpage. We have consistently held that laborer's liens and logger's liens may be enforced against part of the logs or part of the lumber on which the work had been done for the whole amount of such work. It would seem to logically follow that the same rule ought to apply to stumpage.

It is claimed, however, that there cannot be any such thing as a statutory eloignment of ties where the same have been cut at the mill and not as part of the logging operations. It is true that our eloignment statute provides for the recovery of damages in the event of an eloignment of "sawlogs, spars, piles, shingles or other timber," being the same words used in the section with reference to stumpage liens. But since we have held that the stumpage lien on "sawlogs, spars, piles or other timber" may be filed on the ties into which such character of timber is subsequently made if their identity can be traced, it would seem to necessarily follow that ties and lumber also may be subject to eloignment when covered by a logger's or stumpage lien.

(8)   While the action started as one in eloignment and also for foreclosure of a lien, the foreclosure part was ultimately waived and judgment taken only for damages on account of the eloignment.   The court allowed an attorney's fee of $250.   Attorney's fees cannot be allowed except by statute, and while it is provided that there may be attorney's fees in a suit to foreclose a statutory lien, there is no such provision in the eloignment statutes.   It seems clear to us that the court was in error in allowing attorney's fee.

Some other questions are discussed.   We have carefully considered them, but on account of the length of this opinion will do nothing more than say that we think they are without merit.

Let $250 be deducted from the judgment, and as thus modified it is affirmed.   Appellant will recover costs in this court.

MAIN, C. J., FULLERTON, PEMBERTON, and MITCHELL, JJ., concur.