[No. 18770.   Department One.   December 4, 1924.]

F. C. CARR, *Receiver for Chehalis Valley Lumber Company, Appellant,* v. BUNKER CREEK LOGGING COMPANY, *Respondent.*[1]

LOGS AND LOGGING (22)—LIENS—PROPERTY SUBJECT—LUMBER SHIPPED FROM MILL.   Under Rem. Comp. Stat., § 1163, giving a laborer's lien on lumber "while the same remains at the mill    .    .    .    or under the control of the manufacturer," there is no lien on lumber shipped away from the mill two days prior to the filing of the claim for lien, together with an assignment of the bill of lading to the lessor of the mill, thereby putting the shipment beyond the control of the manufacturer.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered May 13, 1924, in receivership proceedings, denying claims for labor liens upon a car of lumber, after a trial on the merits to the court.   Affirmed.

*P. C. Kibbe,* for appellant.

*Hull & Murray,* for respondent.

[1]Reported in 230 Pac. 422.

PARKER, J.—This is a controversy in the receivership of the copartnership doing business under the name of Chehalis Valley Lumber Company, pending in the superior court for Lewis county. The controversy is over conflicting claims of Carr as receiver and the logging company to funds which are the proceeds of a car of lumber, which funds have been, by the consent of the respective claimants, placed in the hands of the clerk of the superior court pending the adjudication of their respective rights thereto. From a judgment of the superior court awarding to the Bunker Creek Logging Company $350.07 of the funds in question, the receiver has appealed to this court.

The controlling facts, we think, are either concededly admitted or conclusively proven, and may be summarized as follows: On November 7, 1923, the Chehalis Valley Lumber Company, a copartnership, then doing business under the name of Rube Barker Lumber Company, entered into a contract with Bunker Creek Logging Company by the terms of which the lumber company leased from the logging company its sawmill. The lease contract contemplated the furnishing of logs to the mill by the logging company, with reference to which it contained, among other provisions, the following:

"The lessee [lumber company] covenants and agrees that, immediately upon making shipments of lumber, he will turn over to the lessor [logging company] the invoices and bills of lading therefor and therewith an assignment of such invoices, hereby constituting and appointing the said lessor his agent for the purposes of collecting said invoices, this appointment being irrevocable, and authorizing the lessor out of the proceeds of the collection of any invoice to retain the sum of $1.25 per thousand feet as rental, and the additional sum of $15.50 per thousand feet for logs furnished, as hereinbefore provided, wherever such

lumber is cut from logs furnished by the lessor. The lessor will then turn over to the lessee any excess remaining,     .    .    ."

The furnishing of logs and the manufacturing of them into lumber at the mill by the lumber company was proceeded with accordingly. On December 20, 1923, a carload of the lumber, so manufactured from logs so furnished by the logging company, was billed and shipped by the lumber company to Dodwell & Company, at Tacoma; the bill of lading and invoice therefor being then assigned by the lumber company to the logging company in pursuance of the terms of the contract above quoted. This car of lumber arrived at Tacoma not later than December 22nd, some fifty miles or more from the mill where the lumber was manufactured, by which shipment and assignment of the bill of lading therefor to the logging company the lumber passed out of the possession and control of the lumber company. Thereafter, on December 24th, a number of lien claims were filed in the office of the auditor of Lewis county, the county wherein the mill is situated and the lumber was manufactured, claiming liens upon this car of lumber as though it were still within that county, though recognizing that it had been loaded upon the car. On the same day, these lien claimants commenced their action in the superior court for Lewis county seeking foreclosure of their lien claims and the subjecting of this car of lumber, and other lumber, to the payment thereof. Soon thereafter, at the instance of those claimants, as plaintiffs in that action, F. C. Carr was appointed receiver for the lumber company because of its insolvency. Claims were then made to the railway company and to Dodwell & Company for the car of lumber by the logging company and the receiver of the lumber company.

The railway company, being uncertain as to whom it should deliver the car of lumber, and Dodwell & Company being uncertain as to whom it should make payment for the lumber, by agreement of the receiver and the logging company, the purchase price of the lumber owing by Dodwell & Company, to wit, the sum of $459.28, was deposited with the clerk of the superior court in which the receivership was being administered, pending a determination of the conflicting claims of the logging company and the receiver of the lumber company. This effected a release of both the railway company and Dodwell & Company from further liability with reference to the car of lumber, leaving the controversy between the receiver and the logging company as to their respective rights in the money so deposited with the clerk of the superior court.

Upon the filing of a report of the receiver disclosing this controversy between him and the logging company, the matter was disposed of by the superior court upon the merits without formal pleadings, the issues being made plain by the receiver's report and other portions of the record in the receivership proceedings. Judgment was rendered in favor of the logging company by awarding it the sum of $350.07 of the funds, as above noticed. It is plain from the record that the logging company would be entitled to this amount of the proceeds of the car of lumber if this were a controversy between the logging company and the lumber company. Whether the logging company is entitled to this amount of such proceeds, as against the lien claimants represented by the receiver, is the problem here presented.

Did the lien claimants, now represented by the receiver, acquire any lien rights in the car of lumber by the filing of their lien claims on December 24th and

the commencement of their suit to foreclose their lien claims on that day? We think not as against the logging company, since the shipment of the car of lumber from the mill where the lumber was manufactured, and the assignment of the bill of lading and invoice to the logging company, occurred some two days prior to the filing of those lien claims. Section 1163, Rem. Comp. Stat. [P. C. § 9680], giving the lien right which the receiver invokes in behalf of the lien claimants, reads:

"Every person performing work or labor or assisting in manufacturing sawlogs and other timber into lumber and shingles, has a lien upon such lumber while the same remains at the mill where it was manufactured, or in the possession or under the control of the manufacturer,     .     .     ."

See *Douglas v. Woodbury Lumber Co.*, 101 Wash. 668, 172 Pac. 906. It may be conceded for the sake of argument that the assignment of the bill of lading did not absolutely divest the lumber company of all title and interest in the car of lumber, but that assignment did result in the removal of the car of lumber from "the mill where it was manufactured" and beyond "the control of the manufacturer," the lumber company. The logging company, by the shipment of the car of lumber and the assignment to it of the bill of lading and invoice therefor, acquired what was in legal effect a possessory lien upon the lumber and its proceeds, before the lien claimants here represented by the receiver filed their lien claims.

The judgment is affirmed.

MAIN, C. J., HOLCOMB, TOLMAN, and BRIDGES, JJ., concur.