[No. 20841. Department Two. April 14, 1928.]

GUS ZEHLE, *Respondent and Cross-Appellant*, v. MRS.
R. W. PETERSON *et al., Appellants*, ROBERT W.
PETERSON *et al., Defendants*.[1]

[1] APPEAL (370)—REVIEW—THEORY AND SCOPE OF CASE. After tak-
ing the view that a contract for the purchase of timber had
been paid, entitling the purchaser to a stumpage lien as owner,
appellant cannot assign error in that the record does not clearly
show payment for the timber.

[2] LOGS AND LOGGING (50)—ELOIGNMENT—LIABILITY. The manu-
facture of logs into lumber and shingles, after notice of the fil-
ing of a stumpage lien, supports a judgment for eloignment,
within Rem. Comp. Stat., § 1181, where it was not claimed at
the trial that the manufactured product was still in existence.

[3] SAME (53)—ELOIGNMENT—EVIDENCE. There was a conversion,
in aid of and resulting in the eloignment of logs, within the
provision of Rem. Comp. Stat., § 1181, referring to any person
who shall "eloign, injure . . . or render difficult or impossi-
ble of identification . . .", where defendant sold the logs to
persons who manufactured them into lumber and destroyed
their identity.

[4] APPEAL (386)—REVIEW—PARTIES ENTITLED TO ALLEGE ERROR—
WAIVER OF OBJECTION. Error cannot be assigned on failure to
find that a wife carried on business as a *feme sole*, where, at
the trial, appellant's counsel claimed that her interest was as
a member of the community.

[5] LOGS AND LOGGING (55) — SALE OF LOGS — CONSTRUCTION. The
camp equipment on the premises was included in a contract
whereby one party agreed to buy and another agreed to sell
certain timber at a certain price, to be paid at the rate of $2.25
per thousand, where it was provided that the purchaser was
to become owner of the camp equipment if the stumpage paid
out the full price; and if not he could pay the balance, or leave
the equipment.

Cross-appeals from a judgment of the superior court
for Snohomish county, Alston, J., entered February
23, 1927, in favor of the plaintiff, in an action to fore-
close a logger's lien. Affirmed on both appeals.

[1]Reported in 266 Pac. 684.

*Edwin H. Flick, Clarence J. Coleman, Coleman &
Fogarty, John Sandidge, Horan & Mulvihill,* and *D. V.
Halverstadt,* for appellants.

*Wm. A. Johnson,* for respondent and cross-appellant.

ASKREN, J.—The plaintiff brought this action to foreclose a stumpage lien on certain logs and for judgment in eloignment. From a decision in his favor, this appeal is prosecuted by both parties. For the sake of convenience, the plaintiff will be referred to as respondent.

[1] It is first urged that the court erred in decreeing that the respondent Zehle had a stumpage lien upon the timber in controversy. It appeared from the evidence that Zehle and one McGill purchased the timber in question under a contract with the Admiralty Logging Company. Thereafter Zehle made an agreement to sell his interest to the appellant Peterson. The argument on this point is that there was no evidence that Zehle had paid his contract in full to the Admiralty Logging Company, and that therefore he was not the owner with a right to file a lien, under Rem. Comp. Stat., § 1164 [P. C. § 9681], but that such right belonged exclusively to the Admiralty Logging Company. However, we find evidence indicating that the contract to the logging company had been paid. It is true that the record is not as full and complete upon this subject as it might be, due, no doubt, to the fact that counsel who tried the case for the appellants, and later died, apparently took the position that it had been paid. The court took the same view of the question during the trial, and we think it now too late to complain of its incompleteness.

[2] The next point raised is that there was no eloignment of the logs by the Canyon Lumber Com-

pany, Mutual Shingle Company, George Miller, and Edmonds Mutual Shingle Company. As to all of these, save Miller, the evidence disclosed that they received the logs after the filing of the lien and cut them into lumber or shingles. No claim was made either in pleading or evidence that the lumber manufactured therefrom was still in existence at the time of the trial, nor any contention there made that such lumber should have had a lien foreclosed upon it rather than have the persons who had changed its character held for eloignment. The mere manufacturing of the logs into lumber and shingles may have been sufficient to destroy their identity, and no issue being made thereon we cannot see how there was any error. *Livingstone v. Lovgren,* 27 Wash. 102, 67 Pac. 599; *Davis v. Ship Lumber Co.,* 132 Wash. 167, 231 Pac. 937.

[3] As to Miller it is claimed that since he sold the logs to the persons who manufactured them into lumber and shingles and did not himself destroy their identity or render them difficult of ascertainment, the personal judgment against him for eloignment was improper. The statute on eloignment is as follows:

"Any person who shall eloign, injure, or destroy, or who shall render difficult or impossible of identification any sawlogs, spars, piles, shingles or other timber upon which there is a lien as herein provided, without the express consent of the person entitled to such lien, shall be liable to the lienholder for the damages to the amount secured by his lien, and it being shown to the court in a civil action to enforce said lien, it shall be the duty of the court to enter a personal judgment for the amount in such action against the person, provided he be a party to such action or the damages may be recovered by a civil action against such person." Rem. Comp. Stat., § 1181.

Miller took charge of the operations during the absence of Peterson and made various sales of logs.

The only other question is: Did he eloign them? The word "eloign" is said by Webster's New International Dictionary to mean "To remove afar off; to withdraw; to convey to a distance, or beyond the jurisdiction, or to conceal, as goods liable to duties."

In *Garneau v. Port Blakely Mill Co.*, 8 Wash. 467, 36 Pac. 463, we held that "To 'eloign' is to take away beyond the jurisdiction, or to conceal. . . ."

In *Union State Bank of Wapato v. Warner*, 140 Wash. 220, 248 Pac. 394, we held that

"All who take and appropriate property in defiance of the title or lien rights of others therein, with knowledge of such title or lien rights, become joint converters of the property . . ."

This case was not tried upon the theory of conversion, yet it seems clear that the evidence would justify a finding against Miller as for conversion under our holding just cited. While there is a distinction between eloigning and converting, it is apparent that conversion may, as it did in this case, result in eloignment. We think that the conversion under the circumstances was such as to warrant the court in holding that it was in aid of eloignment, and therefore he should be held as one of the principals of the eloignment. Our attention is directed by appellant to the case of *Lohman v. Peterson*, 87 Wis. 227, 58 N. W. 407, where the Wisconsin court held that one who sold to a railroad ties upon which a lien could be claimed could not be held for eloignment if the railroad removed them from the state.

The Wisconsin statute provided that

"Any person who shall cause the property upon which such lien exists to be transported out of the state of Wisconsin . . . shall be liable to such lien claimant for the amount of his claim as and for a conversion."

The claim was that the defendant in that action had caused the logs to be transported out of the state. The court found that there was no valid lien and no proof that the logs had been transported from the state. It further held that, even if these matters were not decisive, still there was no ground for recovery, since the defendant only sold the ties and there was no evidence tending to show that the defendants caused them to be removed. If we pass over the fact that there was no evidence to sustain the case whatever and consider only the observation of the court with reference to the requirements of the statute, that decision may be somewhat out of harmony with our own view here. But we cannot conclude that it is a sufficiently contrary authority to justify a different holding than we have just enunciated.

[4] The next assignment of error arises out of the following state of facts: Peterson operated the camp from 1925 until about the 21st day of March, when he left the premises. Mrs. Peterson then proceeded with the business until its close. It is urged that the carrying on of the business by Mrs. Peterson was a distinct venture of her own and carried on as a *feme sole*. The short answer to this is that she made no such claim at the trial and that, in response to a statement of the trial court that "his (Peterson's) wife has been found and she is equally interested with him in the operation of the enterprise," counsel for appellant answered: "As a community."

[5] The last assignment of error relates to the stumpage price for which the lien was foreclosed. Since error on the same point is urged by respondent, who has also cross-appealed, we shall treat the arguments together.

Under the contract between Zehle and Peterson, the latter was required to pay the sum of $2.25 for each

thousand feet of logs cut. We have heretofore adverted to the fact that McGill and Zehle bought the timber jointly. The court found that the respective interests of McGill and Zehle in the timber were as follows: McGill seventy-two per cent and Zehle twenty-eight per cent. Zehle and McGill also had expended large sums of money in improvements, consisting of camp buildings, furniture, furnishings, cooking utensils, camp equipment and the like. Under the contract with Peterson, if the amount paid by him at $2.25 per thousand feet paid out the full purchase price, he was to become the owner of the camp equipment; if the payments at $2.25 per thousand did not pay out in full, he could pay the balance and keep the equipment, or could consider the contract at an end and allow Zehle to keep his interest in the equipment. The court found that the value of the timber was $4.25 per thousand feet and that Zehle's twenty-eight per cent interest therein was $1.19, and used this as a basis for determining the amount of the liens. This left $1.06, the balance of the $2.25 as the amount of each per thousand payment to be applied on the camp equipment.

Appellant insists that the court found the agreement was modified from $2.25 to $1.50 per thousand, and therefore urges that the proportionate shares of that amount to be applied are, 79 cents for timber and 71 cents for camp equipment, of which only the 79 cents per thousand would be lienable. But while the court did find that Zehle had agreed to allow Peterson to pay $1.50 per thousand until the log market got better, it did not find that he ever reduced the contract price to be paid as each thousand feet of logs was taken out. It was nothing more than an agreement to accept a smaller payment from time to time, but the amount due on the logs and equipment, according to the con-

tract, remained the same and a lien would exist for the portion of the price thereof which represented the value of the logs.

Zehle, as cross-appellant, urges that $2.25 per thousand represented the price of stumpage in so far as the presence of the camp equipment on the premises made the timber more valuable. He therefore urges that the lien should be at $2.25 per thousand feet. The argument upon this point is interesting, and the point raised is not at all easy of solution.

It is urged that, under the contract, the camp equipment was simply delivered to Peterson for use during the logging operations, and that, if the operations produced sufficient logs to pay the contract in full, he should then be given a bill of sale to the equipment. It is also urged that the language of the contract which uses the words "agrees to buy" and "agrees to sell" indicate not a sale, but an agreement to sell. It would unduly extend this opinion to set out the long involved contract between the parties. We have carefully examined its terms and considered the relations of the parties, and come to the conclusion that the $2.25 price included the camp equipment as well as stumpage, and that the court correctly so ruled.

Many other questions are raised on appeal by both sides. Our examination of them does not disclose that they require argument or discussion in this opinion.

The judgment will be affirmed.

Main, Holcomb, and Fullerton, JJ., concur.