[No. 14727.  Department One.  August 19, 1918.]

J. E. WROTEN *et al.*, *Respondents*, v. C. H. ROBBINS, *Appellant*.[1]

RECEIVERS—APPOINTMENT—PARTIES ENTITLED. Copartners of a failing firm, who were vendees in a conditional sale of a logging outfit, wrongfully excluded from the possession of partnership property by the vendor, without notice, are entitled to maintain an action for the appointment of a receiver to conserve the property and wind up the partnership business.

RECEIVERS—COMPENSATION—ATTORNEY'S FEES. An allowance to a receiver of a logging concern of the usual pay which he could earn as a competent logging foreman, and $50 to his attorney, appear to be modest.

MECHANICS' LIENS—CLAIMS—WAIVER. A clause in a contract for the rental of a donkey engine providing for payment at the time each raft of logs is sold, and if not so paid, giving the lessor the right to declare the agreement at an end, is not a waiver of the right to file a lien for unpaid rental.

Appeal from a judgment of the superior court for Mason county, Wright, J., entered January 9, 1918, in favor of the plaintiffs, in an action for a receiver of a partnership, tried to the court. Affirmed.

*Andrew J. Balliet* and *C. H. Steffen*, for appellant.

*R. A. Lathrop* and *Troy & Sturdevant*, for respondents.

TOLMAN, J.—The respondents and the defendant Barron were, at and before the time of the bringing of

[1]Reported in 174 Pac. 968.

this action, copartners doing business as Mill Creek Logging Company. On October 3, 1916, the copartnership as it was then constituted, purchased from the appellant Robbins a logging outfit, camp outfit, and equipment, and entered into a written agreement of conditional sale with respect thereto, by which the appellant reserved title to the property in himself, which contract does not appear to have been filed for record. The contract provides that the partnership is to be paid for handling and booming certain timber theretofore cut by the appellant, and is to cut certain timber belonging to the appellant, on which he shall be paid a stumpage, and the proceeds of the timber so cut and marketed are to be paid, either to a bank or to appellant, and after payment of wages and operating expenses therefrom, the purchase price of the outfit, $2,500, is to be paid out of such proceeds at the rate of $200 per month; and the partnership agrees to market at least one boom of logs every ninety days, of sufficient size to cover all payments which may become due in any such ninety-day period. The contract further provides:

"It is mutually agreed by and between all the parties hereto, that if the parties of the second part cannot make good in ninety days or perform this agreement during any ninety-day period hereunder, then they hereby agree to relinquish all claim to everything contracted for hereby to the party of the first part, together with all logs, poles, piling and boom-sticks, cut or uncut, on the above described premises and in the water."

The partnership not having marketed sufficient logs to comply with the terms of the agreement, on December 29, 1916, an extension agreement was entered into by which the time for payment was extended for an additional period of ninety days from January 15, 1917, and appellant agreed to furnish all groceries

necessary to be used in carrying on operations during such extended period. No timber was sold and no money paid during such extended period, and so far as appears, no demand was made or default claimed prior to the taking possession of the outfit by the appellant as hereinafter set forth.

On or about May 17, 1917, intervener De Hart, asserting a claim for the rental due him for a donkey engine which he had leased to the partnership about December 1, 1916, filed a lien therefor, and demanded his money, threatening to foreclose his lien if he were not paid. The partnership not being able to pay De Hart, and having a possible opportunity to sell out, respondents leaving the defendant Barron in charge came to Olympia, and with De Hart went to the appellant's place of business on May 19, 1917. The evidence is conflicting as to just what took place at that time, but it appears that the respondents and De Hart both demanded of the appellant that he pay or secure De Hart so that the lien might be released and the operations proceed or the sale be consummated; and respondents also asked for a statement of the amount due from the partnership to the appellant. The appellant refused to pay or secure De Hart, and seems to have promised a statement of his account within a day or two, which was never furnished. There is some testimony that the respondents refused to return to their work unless De Hart's claim was taken care of, all of which is denied by them.

While the respondents were waiting for the statement of account, the appellant, as he claims, because of their refusal to return to camp and go on with the work, but at any rate without any previous demand and without notice to respondents, took possession of the camp and of all the property covered by the contract, excluding respondents therefrom, and claiming

that they had abandoned their contract and that their
rights were forfeited; whereupon this action was com-
menced seeking the appointment of a temporary re-
ceiver, praying that a hearing be had, and that a per-
manent receiver be appointed to take charge of all of
the property described in the contract and of the tim-
ber produced by the partnership under the contract,
and dispose of the same and of the proceeds as the
court might direct in winding up the partnership busi-
ness. A temporary receiver was appointed, and after
a hearing the receiver was continued pending the
litigation.

The lien claimants intervened in the cause. The
receiver, under order of court disposed of the tim-
ber cut by the partnership, from which he realized
$2,286.92. On July 16, 1917, the trial court entered a
decree allowing the receiver $175 as his fees to that
date, directing the payment of the receiver's expenses,
allowing the intervener De Hart $352.92 in full of his
lien and costs, allowing the intervener Mrs. J. E.
Wroten $171.75 in full of her lien claim and costs,
directing the payment to appellant of $491.45 in full
for stumpage, and the payment of the other preferred
claims for labor, allowing the appellant's claim for
groceries furnished, as a general claim, and allowing
other general claims. The decree directed that the
proceeds from the timber realized by the receiver be
first exhausted in paying these allowances and, if
there should be a deficiency, such deficiency should
be paid out of the property described in the conditional
sale agreement; and the court retained jurisdiction for
the purpose of disposing of said property if necessary.
Thereafter the court made an additional allowance to
the receiver of $233.10, being at the regular rate of
pay for a logging foreman, allowed $50 to the attor-
neys for the receiver as their fees, and allowed the

intervener De Hart's claim for certain cables which had been leased with the donkey engine, together with the cost of delivery of the same to him.

The appellants have appealed from this decree, and by assignments of error question the appointment of the receiver, the compensation allowed to him and to his attorneys, and the allowance of the claims of the intervener, including De Hart's claim for the cables.

We have carefully examined the record, and find that about the only material conflict in the testimony on the main issue is upon the question of the abandonment of the enterprise by the respondents, and are satisfied that the abandonment is not established and, therefore, the attempt of the appellant to take possession without notice cannot be considered as altering the rights of the parties. That being so, the respondents were sufficiently interested in the subject-matter to justify the appointment of a receiver, to say nothing of the rights of creditors, which alone might be sufficient.

The allowance to the receiver and his attorneys appears to be modest, the receiver being a competent logging foreman, and receiving only what amounted to the usual pay of such a foreman. These are matters with which the trial court, by reason of his knowledge of the extent and nature of the services, was peculiarly qualified to deal, and we find nothing in the record which warrants us in disturbing his judgment thereon.

The lien claim of De Hart was based upon a written agreement which provided that the rental of $125 per month should be paid "at the time each raft of logs upon which said donkey engine is to be worked is sold, and if not so paid said Leo De Hart can declare this agreement at an end." The agreement also contained an option to purchase, but that does not appear to be

material here. It is argued that the quoted clause from the rental contract brings the intervener's case within the rule laid down by this court in *Anderson v. Tingley*, 24 Wash. 537, 64 Pac. 747, 85 Am. St. 959. In that case the lienor agreed that he should not receive his pay "until the defendant had sold said logs and received the proceeds thereof from such mill." Manifestly it was not the selling of the logs which there defeated the claimant's right to a lien, but the agreement that the employer should receive the money therefor, thus putting the purchaser in a position where he could not protect himself from such a lien except by paying for the logs a second time.

A case more nearly in point is that of *Maris v. Clevenger*, 29 Wash. 395, 69 Pac. 1089, though the contract in that case went further than this, and provided that when the logs were sold the sum due the lienor should be left with the purchaser for him. Nothing said in either case is inconsistent with the general rule laid down in 27 Cyc. 263, which is cited by this court with approval in *Gray v. Hickey*, 94 Wash. 370, 162 Pac. 564, and which is as follows:

"Any agreement or stipulation which clearly shows that it is the intention of the parties that the right to a lien shall be waived is sufficient to accomplish the purpose; but the contract must receive a reasonable construction, and in the absence of language indicating a purpose under no circumstances to claim a lien it is not to be supposed that the contractor intended to absolutely relinquish his right, and where the terms of the contract are ambiguous the doubt should be resolved against the waiver. Agreements with respect to the manner of payment will not effect a waiver of the lien unless the terms agreed on are inconsistent with the existence or enforcement of the lien."

We conclude, therefore, that the court did not err in the allowance of the De Hart claim.

As to the cables which were awarded to De Hart, the court found that they belonged to him, and the evidence does not preponderate against that finding.

A portion of the claim of the intervener Mrs. J. E. Wroten is objected to upon the ground that, about January 1, 1917, the appellant furnished money to pay wages, and all the wages he then supposed were due, and that Mrs. Wroten's claim for the time she had worked between November 24th and January 1st following was not disclosed or presented to him. The claim seems to be fairly established by the evidence, there are no elements of estoppel present, and we think the claim was properly allowed.

Finding no reversible error, the judgment is affirmed.

MAIN, C. J., PARKER, FULLERTON, and HOLCOMB, JJ., concur.