[No. 18657.   Department One.   January 5, 1925.]

## J. A. DAVIS, *Appellant*, v. SHIP LUMBER MILL COMPANY, *Respondent*.[1]

APPEAL (365, 395)—PLEADING (26)—SCOPE OF REVIEW—STATEMENT OF CAUSE OF ACTION.   Where parts of the original and first amended complaints demurred to were erroneously stricken and error is assigned thereon, and demurrers to all the complaints were sustained and error is assigned thereon, the more specific allegations of the first pleadings will be considered, on appeal, as part of and in aid of the more general allegations of the last complaint.

LOGS AND LOGGING (37)—RIGHT TO LIEN—WAIVER—CONTRACT.   A stumpage lien, under Rem. Comp. Stat., § 1164, giving the owner of timber lands a lien upon the logs which he permits another to cut, for the agreed price thereof, is not waived by a contract, alleged to make the logger an "agent" of the owner to sell and collect for the logs, where the contract merely provides that the logger (called the buyer) is to cut the logs and place them in certain waters, and not remove them without notice to the owner (seller), and the logger's subsequent sale and removal of the logs was without notice

[1]Reported in 231 Pac. 937.

and in violation of the contract, which is to be construed, in any event, in the light of the rule of presumptions against waivers.

SAME (23-2)—LIENS—TIME FOR FILING. A stumpage lien given to the owner of timber by Rem. Comp. Stat., § 1164, which, by § 1169, is to be filed within the same time as the other liens (required by § 1168, to be filed within thirty days after the "close of the rendition of the services . . . , work or labor"), is filed in time if within thirty days after the logger had finished cutting and placing the logs in the water as required by his contract.

SAME (24)—LIENS—LIABILITY FOR ELOIGNMENT—STATUTES. A stumpage lien upon logs, given the owner of timber by Rem. Comp. Stat., § 1164, filed within thirty days after the close of the work, follows the manufactured product, regardless of whether the same remains at the mill where manufactured, and renders the manufacturer who destroys its identification liable for eloignment, under § 1181, even though the eloignment took place prior to the filing of the notice of the lien.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered January 24, 1924, upon sustaining a demurrer to the complaint, dismissing an action to foreclose a stumpage lien. Reversed.

*Blackburn & Gielens,* for appellant.
*Burkey, O'Brien & Burkey,* for respondent.

PARKER, J.—The plaintiff, Davis, by his original complaint filed in the superior court for Pierce county in this action, sought foreclosure of his stumpage lien claim upon logs and lumber manufactured therefrom which were then alleged to be at the defendant mill company's mill, which logs had been logged from his land by the defendant Allison and by him sold to the mill company. That complaint may also be regarded as seeking alternative relief from the mill company by way of damages by eloignment of the logs, in the event that it should ultimately appear that the mill company had rendered the identity of the logs or the lumber manufactured therefrom so uncertain of identification that foreclosure could not be had. Attacks

were made upon that complaint by the mill company which were sustained by the superior court, resulting in the filing by Davis of an amended complaint. Attacks were made by the mill company upon this amended complaint and sustained by the superior court, resulting in the filing by the plaintiff of a second amended complaint, in which the prayer was for damages against the mill company as for eloignment; Davis having in the meantime learned that the mill company had manufactured the logs into lumber and so disposed of the lumber that the identity of both the logs and the lumber had become lost. Attacks by motion and demurrer were made by the mill company upon this second amended complaint and sustained by the superior court. These rulings of the superior court were in effect that neither of the complaints stated facts constituting a cause of action as against the lumber company. Davis then elected to stand upon his second amended complaint and upon certain allegations of his former complaints which had been stricken upon motion of the mill company, and to not plead further. Thereupon final judgment of dismissal was rendered by the superior court in favor of the mill company and against Davis, from which he has appealed to this court. The record before us does not disclose as to whether or not Allison was brought into the case by proper service of summons, nor as to whether or not any disposition of the case has been made as to him. The controversy here, however, is only between Davis and the mill company.

There are two principal questions here presented: (1) Did Davis, by the terms of his logging contract with Allison, make Allison his agent with such unqualified power of sale of the logs as to constitute a waiver of his stumpage lien rights upon the logs and the lumber manufactured therefrom? (2) If Davis'

lien rights were unimpaired by waiver, were his lien rights wrongfully impaired by the mill company by its rendering impossible of identification the logs and the lumber it manufactured therefrom? We at this time make these statements of the principal questions here presented to the end that the applicability of the controlling facts may be more readily discerned as we proceed with our statements of them.

The allegations made by Davis, which for present purposes we must assume to be true, controlling of the respective claimed rights of Davis and the mill company as between themselves, may be summarized as follows: On October 25, 1921, Davis was the owner of a tract of timber land near Lake Bay, in Pierce county. On that day Davis entered into a contract with Allison for the sale to and logging by him of the timber upon that land. That contract reads, in so far as is necessary to be here noticed, as follows:

"Witnesseth, That the seller hereby agrees to sell to the buyer and the buyer hereby agrees to purchase from the seller, [Here follows a description of the timber and of the land upon which it is situated] for the purchase price or consideration of Three thousand ($3,000) Dollars, payable by the buyer to the seller at the times and in the manner hereinafter specified, to-wit:

"Six hundred ($600) Dollars, cash, paid at the time of the execution hereof, the receipt of which is hereby acknowledged, Four hundred ($400) Dollars cash, on or before the 10th day of November, 1921, and the balance or sum of Two thousand ($2,000) Dollars, to be paid in installments of not less than Five hundred ($500) Dollars each, until the full purchase price or consideration aforesaid, has been paid, and in any event, before the 1st day of June, 1922, one of said installments to be paid within ten (10) days after the disposal and delivery, by the seller, of each boom containing logs or timber sold hereunder, until said pur-

chase price or consideration has been fully paid as aforesaid.

"The buyer agrees that as he cuts said timber from said premises, he will place the same in the waters of Puget Sound, at or near Lake Bay, Pierce County, Washington, in booms of not to exceed Two hundred thousand feet (200,000 F.) per boom, for towing and delivery and that he will not tow or move any such boom from the place of its formation, until he has given the seller at least two (2) days previous written notice of his intention to move or tow the same therefrom, together with the scale or measurement of the logs therein contained and the name of the person, firm or corporation to whom the same is to be delivered.

"The buyer further agrees that he will forthwith begin the cutting of said timber and will cut, place in booms, and dispose of sufficient thereof to therefrom pay to the seller the full amount of the aforesaid purchase price, on or before the 1st day of June, 1922, and that all of said timber that remains on said premises on the 1st day of October, 1922, whether the same be standing or down, shall revert to and be the property of the seller, as fully and completely as though this agreement had never been made."

Allison thereupon commenced the contemplated logging operations, and on November 25, 1921, finished placing in the water at Lake Bay a boom of the logs containing 128,000 feet, and on that day caused the logs to be moved to the plant of the mill company at Tacoma, sold them to the mill company and received from it the entire purchase price thereof. Allison violated the terms of the sale and logging contract between him and Davis in that he moved the logs from Lake Bay to the mill company's plant and sold them to the mill company without giving any previous notice or information to Davis as required by the terms of their sale and logging contract. Soon thereafter Davis learned of the removal and sale of the logs to the mill company. Thereupon Davis promptly demanded pay-

ment of $500 from Allison and also from the mill company, due him under the terms of the sale and logging contract, which demands were both refused. Thereafter on December 10, 1921, Davis caused to be duly filed in the office of the auditor of Pierce county notice of his claim of lien upon the logs, claiming $500 to be due him for stumpage, and referring to the logs in part as "now at the plant of the Ship Lumber Mill Company;" manifestly assuming that the logs were then not manufactured into lumber or their identity rendered uncertain. On December 14, 1921, Davis commenced this action.

Immediately upon the receipt of the logs, the mill company proceeded to manufacture them into lumber and intermingle the lumber with other lumber, and thereby caused the identity of both the logs and lumber to become lost. This was fully accomplished before the filing of the lien notice by Davis on December 10, 1921. Long before the filing by Davis of his second amended complaint in this action, seeking damages from the mill company as for eloignment, the lumber manufactured from the logs had been sold and disposed of by the mill company. Thus was foreclosure of Davis' lien claim and the subjecting of the logs or the lumber to the payment thereof rendered impossible.

The allegation of Davis' filing of his notice of lien claim, found in his second amended complaint, is somewhat general and it may be, viewed technically, subject to the objection that it is a mere conclusion, but sufficient specific allegations in that behalf were made in his former complaints, which allegations were by the court stricken, we think erroneously, as will more fully appear as we proceed, in response to motions in that behalf made by counsel for the mill company, to which rulings due exceptions were taken by counsel for Davis. Besides, counsel for the mill company here

argue, not that the filing of the lien claim is insufficiently alleged, but that Davis has no lien, because he has waived it, and because he has not timely asserted it by filing; counsel for the mill company referring to the data in the former complaints. We, therefore, think that, in so far as such filing of Davis' lien claim may be necessary to his right of recovery against the mill company in this action, we must now view such sufficient allegations thereof in his former complaints as part of his pleaded cause of action here under inquiry. The striking of these allegations in the former complaints is one of the claims of error here to be considered incident to the appeal from the final judgment of dismissal, just as the sustaining of the attacks made upon the sufficiency of the second amended complaint is a claim of error here to be considered incident to the appeal from the final judgment of dismissal.

The statutory lien right here invoked by Davis is found in § 1164, Rem. Comp. Stat. [P. C. § 9681], reading as follows:

"Any person who shall permit another to go upon his timber land and cut thereon sawlogs, spars, piles, or other timber, has a lien upon the same for the price agreed to be paid for such privilege, or for the price such privilege would be reasonably worth in case there was no express agreement fixing the price."

It is plain that Davis has this lien right unless it has been waived by him by the terms of his sale and logging contract with Allison, or has become lost to him by his failure to timely assert it. The superior court evidently disposed of the cause upon the theory that Davis, by the terms of his sale and logging contract with Allison, waived his statutory lien right, in that he thereby constituted Allison his agent with unqualified and unrestricted power of sale of the logs with power to collect

the purchase price. This evidently is the reason entertained by the trial court for striking from the complaints the allegations of the filing of Davis' lien claim, as being immaterial.

We first inquire, do the terms of the sale and logging contract between Davis and Allison evidence a waiver by Davis of his statutory lien right? The answer to this inquiry is to be found in the language of that contract in so far as it purports to make Allison the agent of Davis with reference to the sale of the logs and the collection of the purchase price thereof. Now what was Allison to do before having the right to remove or sell the logs? Referring to him as the seller, the contract provides:

"The buyer agrees that as he cuts said timber from said premises, he will place the same in the waters of Puget Sound, at or near Lake Bay, Pierce County, Washington, in booms of not to exceed Two hundred thousand feet (200,000 F.) per boom, for towing and delivery and that he will not tow or move any such boom from the place of its formation, until he has given the seller at least two (2) days previous written notice of his intention to move or tow the same therefrom, together with the scale or measurement of the logs therein contained and the name of the person, firm or corporation to whom the same is to be delivered."

This language, it seems to us, evidences a plain intent to restrict the right of sale of the logs by Allison until after he has given to Davis the notice and information therein specified. The removal and sale of the logs by Allison prior to the giving to Davis of such notice and information was a removal and sale of the logs without the consent of Davis and in direct violation of the terms of the contract, in so far as it can be viewed as an agency contract vesting in Allison the power of sale of the logs for Davis. Even if the

terms of the contract were of uncertain meaning on this subject, we would interpret them in the light of the well-recognized presumption against waivers of statutory or other clear lien rights. *Gray v. Hickey*, 94 Wash. 370, 162 Pac. 564; *Wroten v. Robbins*, 103 Wash. 393, 174 Pac. 968; *Adams v. Harvey*, 129 Wash. 483, 225 Pac. 407; 13 R. C. L. 605.

Counsel for the mill company rely principally upon the decision of this court in *Anderson v. Tingley*, 24 Wash. 537, 64 Pac. 747, 85 Am. St. 959. The situation there in question is sought to be likened to this in that the owner was to pay the logger for the logging from the proceeds of the sale of the logs and not until he had made such sale. We may concede that in this respect there is some degree of analogy between that case and this; but here we have something more, that is, the right and power of sale in Allison is restricted and withheld until after he has given to Davis the notice and information as prescribed in their sale and logging contract. Until Allison had given such notice and information to Davis, he did not have the right to remove or sell the logs. No such restrictions are to be found in the logging contract involved in that case. Later decisions of this court lend support to the view that there was no waiver by Davis of his statutory lien right by the terms of his sale and logging contract with Allison. *Maris v. Clevenger*, 29 Wash. 395, 69 Pac. 1089; *Wroten v. Robbins*, 103 Wash. 393, 174 Pac. 968; *Adams v. Harvey*, 129 Wash. 483, 225 Pac. 407.

Was Davis' lien right wrongfully impaired by the mill company by its rendering impossible of identification the logs and lumber manufactured therefrom? Counsel for the mill company contend for an affirmative answer to this inquiry, arguing that such must be the answer "because no lien claim was filed prior to the sale of the logs, or prior to the manufacture into lum-

ber by the mill company.'' It seems to us that this con-
tention is answered by the plain provisions of our lien
statute. Let us be reminded here that our lien statute
controlling this question is embodied in a single act
of the legislature of 1893. This act contains twenty
sections and may well be called a code providing for
and regulating liens upon logs, piles, etc., and manu-
factured lumber. Laws of 1893, p. 428; Rem. Comp.
Stat., §§ 1162-1181 [P. C. § 9679 *et seq.*]. This statute
has not since then been amended or changed in any
respect in so far as it bears upon our present inquiry.
In reviewing its provisions with which we are here con-
cerned, we shall refer to the original section numbers
of the act. Section 1 of the Laws of 1893, p. 428, gives
to a person who assists in obtaining and securing
logs, piles, etc., a lien thereon for the rendering of
such services. This may be appropriately called a
''logger's lien.'' Section 2 of the Laws of 1893, p. 428,
[Rem. Comp. Stat., § 1163] gives to a person who per-
forms work in the manufacture of lumber ''a lien upon
such lumber while the same remains at the mill where
it is manufactured or in the possession or under the
control of the manufacturer.'' This may be appropri-
ately called a ''mill laborer's lien.'' Section 3 of the
Laws of 1893, p. 429, which we have above quoted as
§ 1164, Rem. Comp. Stat., gives a lien to the owner of
the timber in its original state, upon logs, piles, etc.,
produced therefrom. This may be appropriately called
a ''stumpage lien,'' and as we have seen, is the one
here in question. Section 7 of the Laws of 1893, p. 429,
reads in part as follows:

''Every person within thirty days after the close of
the rendition of the services, or after the close of the
work or labor mentioned in the preceding sections      .
     .     .     claiming the benefit hereof, must file for
record with the county auditor of the county in which

such  .   .   .    lumber or shingles were manufactured, a claim containing a statement of his demand.  .   .   ." Rem. Comp. Stat., § 1168.

This section, it will be noticed, does not in terms refer to a claim for stumpage lien. However, § 8 of the Laws of 1893, p. 431, reads as follows:

"Every person mentioned in section three of this act claiming the benefit thereof must file for record with the county auditor of the county in which such sawlogs, spars, piles, or other timber were cut, a claim in substance the same as provided in the next preceding section of this chapter and verified as therein provided." Rem. Comp. Stat., § 1169.

thus plainly making the method of claiming of record a stumpage lien and the time of making such claim the same as prescribed in § 7 with reference to the other liens. Section 16 of the Laws of 1893, p. 433, reads as follows:

"It shall be conclusively presumed by the court that a party purchasing the property liened upon within thirty days given herein to claimants wherein to file their liens, is not an innocent third party, nor that he has become a *bona fide* owner of the property liened upon, unless it shall appear that he has paid full value for the said property, and has seen that the purchase money of the said property has been applied to the payment of such *bona fide* claims as are entitled to liens upon the said property under the provisions of this chapter, according to the priorities herein established." Rem. Comp. Stat., § 1177.

Section 20 of the Laws of 1893, p. 434, reads as follows:

"Any person who shall eloign, injure or destroy, or who shall render difficult, uncertain or impossible of identification any sawlogs, spars, piles, shingles or other timber upon which there is a lien as herein provided, without the express consent of the person entitled to such lien, shall be liable to the lienholder for

the damages to the amount secured by his lien, and it being shown to the court in the civil action to enforce said lien, it shall be the duty of the court to enter a personal judgment for the amount in such action against the said person, provided he be a party to such action, or the damages may be recovered by a civil action against such person.'' Rem. Comp. Stat., § 1181.

Now Davis duly filed his claim of lien within the prescribed thirty-day period following the finishing and placing of the boom of logs in the water by Allison. That plainly was the time when the thirty-day period, within which Davis was required to file his lien claim, commenced to run. Further, it was clearly within this thirty-day period that the mill company to whom Allison assumed to sell and deliver the logs rendered impossible of identification the logs and the lumber manufactured by it therefrom. While this occurred before the filing of Davis' claim of lien, it also occurred before the expiration of the thirty-day period within which Davis'· lien remained in full force as against the mill company without the filing of any notice therof. By what sort of logic it can now be held that the mill company is freed from the effect of its eloignment of the logs and the lumber manufactured therefrom, as that act is defined by § 20 above quoted, during the thirty-day period following the finishing of the boom and placing it in the water by Allison, is beyond us to comprehend. This is not a case of attempted enforcement of a mill laborer's lien which by the express terms of § 2, above quoted, does not exist except upon ''lumber while the same remains at the mill where manufactured or in the possession or under the control of the manufacturer.'' There is no similar restriction in the statute upon the stumpage lien right in § 3 of the act; that is, no such limitation upon the stumpage lien right as prevents it from remaining

upon the logs after they have left the possession of the logger and gone into the possession of a mill owner for manufacture; though it may be conceded that the stumpage lien, like the mill laborer's lien, cannot follow the lumber after it has left the mill and the possession of the manufacturer.

These statutory provisions, we think, render it plain that the stumpage lien right follows the logs and lumber manufactured therefrom for a period of thirty days after the logging operation which produces them is finished, into whosesoever's hands they may go up to the time the lumber manufactured therefrom leaves the mill and the manufacturer, without the filing of a lien notice; and that, if during that thirty-day period, the identification of the logs or lumber is rendered impossible, the one responsible for the effecting of such loss of identification becomes an eloigner and liable under § 20 above quoted. Just what might be the result had Davis failed to file his lien notice within the prescribed thirty-day period, we think, is of no consequence in our present inquiry. At all events, he had a lien right and perfected it during that period by duly filing his notice of lien, and it was within that period that the mill company eloigned the logs by rendering them and the lumber manufactured therefrom impossible of identification. These observations, we think, demonstrate that the decisions of this court in *Douglass v. Woodbury Lumber Co.*, 101 Wash. 668, 172 Pac. 906, and *Carr v. Bunker Creek Logging Co.*, 131 Wash. 535, 230 Pac. 422, relating to mill laborers' liens sought to be enforced upon lumber which had gone from the mill and from the possession and control of the manufacturer, are not out of harmony with the conclusion we here reach.

Counsel for the mill company call our attention to and rely upon the decision of this court in *Akers v.*

*Lord,* 67 Wash. 179, 121 Pac. 51. There is general language in that decision to the effect that there can be no eloignment prior to the filing of a notice of lien. That language, however, seems to have been used with reference to a possible eloignment by a purchaser of a finished lumber product upon it leaving the mill and the control of the manufacturer. This, we think, does not persuasively argue that a mill owner, purchaser of logs, may not be guilty of eloignment of the logs, as against the lien rights of a stumpage or logger lien claimant, by destroying the identity of the logs and the lumber it manufactured therefrom, during the thirty-day period for the asserting of such lien right by filing notice of lien. We are to remember that it is the mill company, the purchaser of these logs, that is sought to be charged with eloignment of the logs. *Chute v. Brown,* 103 Wash. 364, 174 Pac. 438, can be similarly distinguished from this case. We think these cases are not controlling in our present inquiry. Our later decision in *Adams v. Harvey,* 129 Wash. 483, 225 Pac. 407, lends strong support to our present conclusion.

We conclude that the judgment must be reversed and the cause remanded to the superior court for further proceedings in harmony with the views herein expressed. It is so ordered.

MAIN, C. J., HOLCOMB, TOLMAN, and BRIDGES, JJ., concur.