[No. 18830. Department One. June 2, 1925.]

CHAS. M. FOUTS *et al., Respondents,* v. CHICAGO LUMBER COMPANY, *Appellant.*[1]

LOGS AND LOGGING (22)—LIEN—PROPERTY SUBJECT. The stumpage lien of a timber owner may be enforced against the manufactured lumber while it remains at and is in the possession of the mill where it was manufactured.

SAME (31)—LIEN—AMOUNT. The owner's stumpage lien is not affected by the fact that there was no proof of the reasonable value of the stumpage, when the contract expressly provided that stumpage should be paid at the rate of $2.50 per thousand until the whole purchase price was paid, where much of the timber had not been cut or the total sales price paid.

SAME (37)—RIGHT TO LIEN—WAIVER. The owner's stumpage lien is not waived by a provision in the contract that the logger had a right to sell the lumber and that the stumpage did not become due until such sale was made.

SAME (37)—RIGHT TO LIEN—WAIVER—TERMINATION OF CONTRACT. The owner's termination of a logger's contract for timber, for default in the payment of stumpage due, and repossession of the property, does not defeat his stumpage lien theretofore filed, upon timber that had already been cut and manufactured into lumber.

Appeal from a judgment of the superior court for King county, Hall, J., entered March 22, 1924, in favor of the plaintiffs, in an action for damages for eloignment of lumber, tried to the court. Affirmed.

*Alexander, Bundy & Swale,* for appellant.
*C. B. W. Raymond,* for respondents.

BRIDGES, J.—Respondents were the owners of a section of land on which was considerable standing timber. They also owned a small sawmill located on the land and some logging equipment. By one contract they agreed to sell the sawmill and logging equipment to Page & Bolster Shingle Company, and by another con-

[1]Reported in 236 Pac. 277.

tract they agreed to sell to it the standing timber, the purchase price of the latter being $17,500. We are not directly interested in the first contract. The shingle company agreed to cut this timber and saw it into lumber at the mill which was on the land. The clause of this contract which is involved here is that the shingle company is "to pay to first parties (the respondents) as stumpage $2.50 per one thousand feet for each thousand feet of lumber, board measure, as soon as said lumber is removed from said premises, or sold, until the purchase price of said timber with interest thereon as aforesaid has been fully paid." There is nothing in the contract or testimony to show how much timber there was on the land. The shingle company duly entered into the performance of the contract, cut a considerable quantity of logs and manufactured them into lumber, most of which had been sold.

On October 4, 1920, there remained at the mill about 30,000 feet of lumber. On that date the respondents filed a lien claim on this lumber for the stumpage they claimed to be due and owing them. It is not denied but what at that time and at the time of the trial the shingle company owed the respondents on stumpage more than the amount involved in this action. Some days before the filing of the lien, the appellant placed an order with the shingle company for a carload of lumber, and two days after the filing of the lien this lumber was loaded and shipped out from the mill and was later received by the appellant, which moved it out of the state, or, at any rate, placed it beyond the reach of the respondents. It is conceded that this lumber was worth $600. Thereafter respondent brought this action to recover the value of the carload of lumber. The trial court entered judgment for the respondents in the sum of $600.

In the case of *Adams v. Harvey,* 129 Wash. 483, 225 Pac. 407, we held that a timber owner may file a stumpage lien on lumber cut from his logs while the lumber remains at the mill where it was manufactured.

Appellant first contends that there can be no recovery because no proof of the reasonable value of the stumpage was made and the contract does not fix any agreed value, and that there is, therefore, no way by which the court can determine how much per thousand feet the vendee was to pay. The contract expressly provided that stumpage at the rate of $2.50 per thousand feet should be paid. It is true that at that rate the total sales price of the timber may have been paid for before all the timber was cut, but that can make no difference because the parties have agreed to the payment of an exact amount for stumpage until the whole purchase price has been paid, and the testimony shows that much of the timber has not yet been cut, and consequently much of the agreed purchase price has not been paid.

The chief arguments of appellant are that if the respondents had a right of lien they waived it by providing in the clause of the contract which we have quoted that the shingle company had a right to sell the lumber and that the stumpage did not become payable until such a sale was made. This court, in common with others, has held that a right of lien will not be considered as waived unless it is clearly shown that it was the intention so to do. 27 Cyc. 263; *Gray v. Hickey,* 94 Wash. 370, 162 Pac. 564; *Wroten v. Robbins,* 103 Wash. 393, 174 Pac. 968; *Adams v. Harvey, supra.*

Appellant, to a large extent, rests its argument on *Anderson v. Tingley,* 24 Wash. 537, 64 Pac. 747, 85 Am. St. 959. There the contract between the boss logger and the workman provided that the latter

"should not have and receive his pay for services until the defendant had sold said logs and received the proceeds thereof from such mill." It was there held that the plaintiff, by authorizing the defendant to sell the logs and collect the purchase price, waived his right of lien as against the person to whom the defendant had sold the logs and who had paid the defendant therefor. But that contract is very different from the one here, which is that the shingle company was to pay the stumpage as "the timber is removed from said premises or sold. . . ." There is no provision here which authorizes the shingle company to collect the purchase money.

It is well known that loggers must often have the privilege of selling their product in order to raise money to pay their bills, including stumpage. Indeed, it is probably true that when the logs are cut they become the property of the logger and he has an independent right to dispose of them; but there is nothing inconsistent in the timber owner permitting the logger to sell the logs, at the same time reserving his right of stumpage. The statute gives that right, and any purchaser of logs or lumber from which they are cut must take notice of the fact that there may be stumpage liens or stumpage lien rights. It may be conceded that this places a burden upon the purchaser, but it is a burden placed there by the statute itself.

The point we wish to make clear is this, that if the stumpage man authorizes the logger to sell the logs or the lumber into which they have been cut and collect the sale price, he waives his lien right, but if he merely authorizes the logger to sell, it is not waived. We so held in *Wroten v. Robbins, supra,* for there, commenting on the case of *Anderson v. Tingley, supra,* to the effect that the lienor agreed that he should not receive

his pay "until the defendant had sold said logs and received the proceeds thereof from such mill," we said: "Manifestly it was not the selling of the logs which there defeated the claimant's right to a lien, but the agreement that the employer should receive the money therefor."

In the case of *Maris v. Clevenger*, 29 Wash. 395, 69 Pac. 1089, a contract between the landowner and parties doing the logging provided that the logger might market the logs "and leave with the purchaser or purchasers of said logs the sum of seventy-five cents per thousand feet for the timber owner." It was held that, under this character of contract, the right of lien was not waived. See, also, *Davis v. Ship Lumber Co.*, 132 Wash. 167, 231 Pac. 937.

It appears that, two days before the lien notice was filed, the respondents gave notice to the shingle company of its breach of the logging contract and that it would be terminated unless the overdue stumpage was paid by the 7th of that month. The payments not having been made, the respondents terminated the contract and re-possessed themselves of such of the property as remained. It is contended by appellant that this termination of the contract had the effect of defeating respondent's right to any further pay on account of the stumpage. This argument is based on *Rose v. Rundall*, 86 Wash. 422, 150 Pac. 614. There we held that where a conditional sales contract was made and the vendor terminated it because of a breach thereof and re-possessed himself of the property, he could not thereafter collect any portion of the purchase price. The doctrine of that case is not applicable here. In the first place, this contract was not terminated until after the lien was filed, and in the next place, the lien covered timber which had been cut and sawed into lumber. As to that property, the contract was not

terminated. It was only ended as to any future operations.

We think the judgment of the trial court was justified, and for that reason it is affirmed.

TOLMAN, C. J., PARKER, MAIN, and ASKREN, JJ., concur.