[No. 23826.  *En Banc.*  December 21, 1932.]

LEE TANKSLEY, *Respondent*, v. G. W. TANKSLEY, *Defendant*, PACIFIC FRUIT & PRODUCE COMPANY, *Appellant*.[1]

[1]Reported in 17 P. (2d) 25.

*LaBerge, Cheney & Hutcheson,* for appellant.
*Bushnell & Beardsley,* for respondent.

TOLMAN, C. J.—The plaintiff below, respondent here, instituted this action against the defendant G. W. Tanksley and the Pacific Fruit & Produce Company for the foreclosure of five farm labor liens upon certain potatoes, in the growing and handling of which labor was performed by the plaintiff himself and his assignors at the instance of the defendant Tanksley, the operator of the farm upon which the potatoes were raised. Plaintiff also sought in the alternative judgment for damages against the corporate defendant for its alleged eloignment of the potatoes, should it be found that they had been removed and their identity lost so as not to be physically subject to foreclosure and sale.

The cause was tried to the court, sitting without a jury, resulting in a judgment establishing the plaintiff's lien rights against the potatoes, and awarding him damages against the corporate defendant for its eloignment of the potatoes. From this judgment, the Pacific Fruit & Produce Company has alone appealed.

The contentions advanced by the appellant in this court have to do largely with the construction and application of our statutory provisions relating to farm labor liens upon crops. In chapter 256, Laws of 1927, p. 577 (Rem. 1927 Sup., § 1188-1 *et seq.*), may be found the following pertinent provisions:

"Any person, who, as laborer, contractor or otherwise, shall, at the request of the owner, or the tenant, of any farm or land, do or cause to be done any work or labor upon any such farm or land, in tilling the same, or any part thereof, or in preparing the same or any part thereof for the growing of crops, or in sowing or planting any crop on the same, or in cultivating any crop growing thereon, or in cutting, dig-

ging, picking, pulling or otherwise harvesting any crop grown thereon, or in gathering, securing, or housing any crop grown thereon, or in threshing any grain grown thereon, shall have a lien upon any and all of the crops grown, during the calendar year in which such work or labor was done. . . .'' Rem. 1927 Sup., § 1188-1.

''Every person claiming a lien, under the provisions of this act, for work and labor done, . . . must within forty days, after the cessation of the work or labor for which the lien is claimed, . . . file for record in the office of the county auditor of the county in which the crop upon which the lien is claimed is growing or was grown, a claim of lien, subscribed and verified under oath by the claimant, or some one in his behalf, to the effect that the affiant believes the claim to be just. . . .'' Rem. 1927 Sup., § 1188-4.

''The county auditor must record any claim filed under the provisions of this act, in a book kept for that purpose, which record must be indexed, as deeds and other conveyances are required by law to be indexed, and for which he shall receive the same fees as are required by law for recording deeds and other instruments.'' Rem. 1927 Sup., § 1188-6.

''Any person who shall eloign, injure, or destroy, or who shall render difficult, uncertain or impossible of identification, any crop or crops upon which there is a lien, as provided for in this act, without the express consent of the lien holder, shall be liable to the lien holder for damages, to the amount secured by his lien, and the facts being shown to the court in the civil action to enforce said lien, it shall be the duty of the court to enter a personal judgment for the amount of such damages and costs, against said person, if he be a party to said action, or such damages may be recovered in a civil action against such person.'' Rem. 1927 Sup., § 1188-15.

Turning to chapter 278, Laws of 1927, p. 670 (Rem. 1927 Sup., § 10596 *et seq.*), our present law relating to recording of real property instruments, we find the following:

"A conveyance of real property, when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. . . . An instrument is deemed recorded the minute it is filed for record." Rem. 1927 Sup., § 10596-2.

Neither chapter 256 nor chapter 278, Laws of 1927, specifies in what manner real property instruments shall be indexed. That requirement is found in Rem. Comp. Stat., § 10603, which has remained unchanged since long prior to the passage of chapters 256 and 278 of the Laws of 1927, and reads as follows:

"Every auditor must keep a general index, direct and inverted. The direct index shall be divided into seven colums, and with heads to the respective columns, as follows: Time of reception, grantor, grantee, nature of instrument, volume and page where recorded, remarks, description of property. He shall correctly enter in such index every instrument concerning or affecting real estate which by law is required to be recorded, the names of grantors being in alphabetical order. The inverted index shall also be divided into seven columns, precisely similar, except that 'grantee' shall occupy the second column and 'grantor' the third, the name of grantees being [in] alphabetical order. For the purposes of this act, the term 'grantor' shall be construed to mean any person conveying or encumbering the title to any property, or any person against whom any lis pendens, judgment, notice of lien, order of sale, execution, writ of attachment, or claims of separate or community property shall be placed on record."

The potatoes in question were raised by the defendant G. W. Tanksley during the year 1931 upon land then farmed by him. The respondent was employed by G. W. Tanksley as a farm laborer in raising and harvesting the potatoes from March 1 to July 1, 1931, at an agreed wage of $40 per month. The whole of

the $160 so earned by the respondent remained unpaid on July 2, 1931, and he on that day filed for record in the office of the auditor of Benton county his claim of lien therefor upon the potatoes. This is the basis of respondent's first cause of action, upon which the trial court awarded him recovery against the appellant in the sum of $160.

Respondent, with his automobile truck, was employed by the defendant G. W. Tanksley from July 1 to July 7, 1931, in hauling 122.5 tons of the potatoes so raised from the field where they had been harvested and sacked and left unhoused, to freight cars at a railway station about one-half mile distant from the field but off the farm on which the potatoes were raised. For this labor, it was agreed between the respondent and his employer that he should be paid eighty cents per ton, and accordingly he earned $98 for the hauling just mentioned. During the same seven-day period, respondent also, with his truck, under like agreement with the farmer who raised the potatoes, hauled twelve tons of the potatoes from the field to another railway station several miles distant from the field and farm for the agreed compensation of $16. The sum of $114 so earned by the respondent for the entire hauling of the potato crop remained wholly unpaid on July 8, 1931, and he on that day filed for record in the office of the auditor of Benton county his claim of lien therefor upon the potatoes. This is the basis of the respondent's second cause of action, upon which the trial court awarded him a recovery of $114 against the appellant.

Floyd Tanksley, James Trulson and Jim Vaughan were also employed as laborers by the defendant G. W. Tanksley in the raising and securing of this same crop of potatoes from March 1, 1931, to July 1, 1931, at an

agreed wage by which they earned, respectively, $160, $80 and $100. Each of these amounts remained wholly unpaid on July 2, 1931, and each of these three laborers on that day filed in the office of the auditor of Benton county his claim of lien for the amounts mentioned upon the potatoes, and thereafter each assigned his claim to the respondent. This is the basis of the respondent's third, fourth and fifth causes of action, upon which the trial court awarded him recovery in the sums of $160, $80 and $100, respectively, against the appellant.

When the potatoes were hauled by the respondent from the field where raised to the railway stations, they were by him loaded directly from his truck into freight cars furnished by the railway company upon the order of the appellant. This disposition of the potatoes was concededly a delivery of them into the physical possession of the appellant, and they were thereafter promptly shipped away from the stations where loaded by the appellant; and concededly the appellant, by so shipping the potatoes, caused their identity to be lost, so that thereafter direct foreclosure and sale of the potatoes was rendered impossible. The appellant company had actual knowledge of the lien rights of the respondent and his assignors when it received the potatoes as above set forth.

The principal contention here made in behalf of the Pacific Fruit & Produce Company is that none of these lien claims has been recorded as required by the statutory provisions which we have already quoted, and that, therefore, none of them became effective in preserving the lien rights of the claimant. When the first lien claim was presented to the county auditor to be made of record, he immediately indorsed thereon as follows: ·

"Filed for record at the request of Geo. Beardsley Jul. 2, 1931 at 15 Min. past 11 A. M. and filed in Series of Chattel Lien Records of Benton County, Washington. E. O. KEENE, County Auditor.
".By T. Strandwold, Deputy."

At that time, the auditor also indexed the instrument in a book in his office designated "Chattel Lien Index," and retained the lien claim as a permanent record in his office. We are warranted in presuming that that indexing furnished all the information required by Rem. Comp. Stat., § 10603, above noticed, except it did not state the recording of the lien claim by reference to book or page. The lien claim never was recorded in a book in the auditor's office, the auditor apparently assuming that the law did not require that it be recorded in a book, but would be properly made of record by filing and retaining the lien claim and indexing it. All of the other four lien claims were treated in exactly the same manner as the first one, except the indorsements thereon and the indexing thereof were different only as to the time of filing and the name of the claimant. For thus making the lien claims of record in his office, the auditor demanded and received from each of the lien claimants fifteen cents as his fee therefor.

The argument, as we understand counsel for the Pacific Fruit & Produce Company, is that the record of the lien claims is ineffectual in preserving the claimant's lien rights, in that the lien claims were not actually recorded by copying "in a book kept for that purpose" and "indexed as deeds and other conveyances are required by law to be indexed," as prescribed by chapter 256, Laws of 1927, p. 580, § 6 (Rem. 1927 Sup., § 1188-6), above quoted. It seems to us that the indexing was plainly sufficient to advise anyone desiring to be informed as to whether or not the pota-

toes were free from liens of the nature here in question that the lien claims were on file for record in the auditor's office, just as the indexing of deeds and conveyances, immediately upon their filing for record and being indexed, advises third parties of the official record thereof, though at the time the index fails to state the book and page of their record; which part of the indexing may not follow immediately but in due course, when the work of recording is actually done.

It seems to us that the concluding language of chapter 278, Laws of 1927, p. 671, § 2, Rem. 1927 Sup., § 10596-2, lends all but conclusive support to this view. It is there expressly declared that "an instrument is deemed recorded the minute it is filed for record." Surely this, at all events, means that the filing of such an instrument and immediately indexing it, except as to book and page of its record, then becomes notice to third parties of the effective public record of such instrument. Just what the effect would be if no indexing of such an instrument be made until after the expiration of a considerable period following its filing, we do not now decide, because the indexing of each of these lien claims was made immediately upon its filing, in addition to the indorsement thereon, above quoted. The statutory language, "to be indexed as deeds and other conveyances are required by law to be indexed," should be carefully noticed. We think this does not mean that such chattel liens shall be indexed *with* "deeds and other conveyances," but only in the same manner. So we are concerned only with the required manner of indexing those instruments, not with the particular book in which they are to be indexed.

In *Malbon v. Grow*, 15 Wash. 301, 46 Pac. 330, there was involved an indexing of a mortgage on real prop-. erty, in which indexing the property was inadequately

described, in that the number 35 in one of the columns left it uncertain as to whether that number referred to a section or a lot, and in that the number 7 in another column left it uncertain as to whether that number referred to a township or a block. Holding that such indexing was sufficient to put third parties upon notice of the recording of the mortgage, which in that case was recorded in a book, the book and page being correctly noted in the indexing, the court said:

"We think that the index in this case furnished information, or at least a suggestion, of the fact of the record of the mortgage which the appellant could not ignore without the grossest kind of negligence. . . . here we have not only the names of the grantor and the grantee and the book in which the instrument is recorded, but we also have a description, though imperfect, of the land itself, sufficient to challenge the attention of the searcher of the record, and one who purchases after such challenge is not an innocent incumbrancer or purchaser without notice."

In *Sawyer v. Vermont Loan etc. Co.*, 41 Wash. 524, 84 Pac. 8, one of the questions was as to whether or not the deed in question was made of record so as to give notice to third parties thereof upon its filing and indexing; it being argued, apparently, that it did not have that effect until actually recorded in a book in the auditor's office. Holding that the filing and indexing were sufficient to put the third party upon notice of the record of the deed, the court used this language:

"We cannot agree with the appellant's contention that the notice by the filing of said quitclaim deed would be good for only twenty days, unless said deed was actually recorded. When a person has filed in the county auditor's office for record an instrument authorized to be recorded, we do not think the delay or neglect of the county auditor in actually recording said instrument can militate against the party who

duly filed said instrument for record, if it was promptly and properly indexed in the book required by law to be kept for that purpose."

We assume that, in that case, the index did not show the book and page of the record of the deed until it was actually recorded in a book a considerable time after its filing. See 23 R. C. L. 187, and authorities there noticed. We are of the opinion that the lien claims were not rendered ineffectual by the mere failure of the county auditor to record them in a book in his office, and that the record made thereof was such as to give legal notice of their record to third parties.

Counsel for the Pacific Fruit & Produce Company rely somewhat upon the fact that each of these lien claimants paid only fifteen cents for the filing of his lien claim for record, which was manifestly not sufficient to pay for its recording in a book. The fact remains that each lien claim became, in legal effect, recorded the minute it was filed for record. Laws of 1927, p. 671, § 2 (Rem. 1927 Sup., § 10596-2). If the auditor has not collected sufficient fees for the complete, technical making of the claims of record, we think that is only a matter of accounting between him and the county.

It is contended that the respondent waived his lien rights by hauling the potatoes off the farm and putting them into the cars furnished by the railway company to the appellant company, this presumably upon the theory that he thereby consented to the removal of the potatoes from Benton county by the appellant; in other words, consented to the destroying of the identity of the potatoes. We do not think this contention is well grounded. Clearly, the appellant did not remove the potatoes and destroy their identity with "the express consent of the lien holder."

These quoted words are from § 15, chapter 256, Laws of 1927, p. 584 (Rem. 1927 Sup., § 1188-15).

But even in the absence of that statutory language, the presumption touching the waiver of statutory or other lien rights is always strongly against such a waiver having been made. *Gray v. Hickey,* 94 Wash. 370, 162 Pac. 564; *Wroten v. Robbins,* 103 Wash. 393, 174 Pac. 968; *Adams v. Harvey,* 129 Wash. 483, 225 Pac. 407; *Davis v. Ship Lumber Mill Co.,* 132 Wash. 167, 231 Pac. 937; 17 R. C. L. 605. We are of the opinion that none of the plaintiff's lien rights was waived.

The appellant strenuously contends that the trial court erred in awarding to the respondent recovery upon his second cause of action for hauling the potatoes from the field and delivering them in freight cars at the railroad sidings. Labor liens of this character are by the express provisions of § 1, chapter 256, Laws of 1927, p. 577 (Rem. 1927 Sup., § 1188-1), awarded for "securing or housing," as well as for work incident to growing and harvesting. If the respondent had hauled the potatoes from the field where they were dug, sacked, and remained unhoused, to some place of storage on the farm, it could hardly be seriously argued that he would not be entitled to a lien upon the potatoes for such labor; or even if the respondent had hauled the potatoes to a place of storage off the farm for the purpose of "securing or housing," still his right to a lien might be upheld. Perhaps the farther the place of storage from the place of growing, the greater the necessity for clear proof that the purpose was to secure and house as distinguished from a purpose to market the crop.

It will be noted that the lien statute hereinbefore quoted confines the right of lien to the work of plant-

ing, growing, harvesting and securing the crop, and contains no language from which can be gathered an intent to likewise favor the labor employed in marketing the crop. We must therefore hold that the right of lien cannot be extended beyond the plain terms of the statute, and that labor expended in marketing is not within those terms.

Was the hauling involved in this cause of action a step in the process of marketing? We think clearly the facts disclosed by the record permit of no other conclusion. The potatoes were all hauled to and unloaded into freight cars placed on a side track to receive them on the order of the appellant, which was apparently primarily a marketing organization. Everyone knows that freight cars are so placed for the purpose of being loaded for shipment, and not for use as places of storage. The act of loading a commercial product into a freight car specially placed on a siding to receive such product must be held to be an act done in furtherance of the shipping away and the marketing of the product so placed in the car, unless a contrary purpose is plainly made to appear. No such contrary purpose is here shown, and it must be held that the labor involved in the second cause of action was labor performed in marketing the crop, for which the legislature has not yet provided lien rights.

We conclude that the judgment upon all of the causes of action must be affirmed, except only as to the second cause of action, and that it must be reversed as to the second cause of action. It is accordingly so ordered, and the cause is remanded to the superior court with directions to modify its judgment by reducing it in the sum of $114 as of the date of its original entry.

The appellant having been successful in this appeal only to the extent of $114 and the respondent having

been successful in maintaining his judgment in all other respects, we conclude that neither party should be permitted to recover costs on this appeal.

MAIN, MITCHELL, HOLCOMB, BEALS, MILLARD, STEINERT, and PARKER, JJ., concur.