[No. 24754.  Department Two.  December 13, 1933.]

GEORGE W. RADFORD, *Respondent,* v. WASHINGTON
FRUIT & PRODUCE COMPANY, *Appellant.*[1]

*Grady & Velikanje* and *Stanley P. Velikanje,* for
appellant.

*LaBerge, Cheney & Hutcheson,* for respondent.

BEALS, C. J.—Plaintiff, George W. Radford, being
the owner of a tract of orchard land in Yakima county,
during the month of February, 1930, leased the same
for the period of approximately nine months to John
Dietz for the sum of $1,050, of which two hundred
dollars was paid in cash. The lease was promptly filed
for record in the office of the county auditor, and Mr.
Dietz entered into possession of the orchard. A few
months later, Mr. Dietz, finding that he was unable to
finance the growing of his apple crop, entered into an

[1]Reported in 27 P. (2d) 702.

agreement with Washington Fruit & Produce Company, defendant in this action, according to the terms of which defendant agreed to advance to Mr. Dietz the funds necessary to grow, care for and pack the apples.

Pursuant to this agreement and as a part thereof, Mr. Dietz executed and delivered to defendant a chattel mortgage covering one-half the apple crop to be grown on the leased property. This chattel mortgage was sworn to and acknowledged May 16, 1930, and was filed for record four days later. The chattel mortgage was to secure money advanced and to be advanced for the benefit and protection of the apple crop. According to its terms, the mortgage was given to secure a note for one hundred dollars and should stand security for other advances not exceeding $550, together with interest at the rate of eight per cent per annum. Attached to the printed mortgage form are three typewritten riders, one containing the description of the land upon which the orchard was standing, the next reading as follows:

"That in consideration of the within loan and the advances to be made as herein provided, said mortgagor and lessor grants unto said mortgagee the first refusal to buy or handle all said crop of fruit, prices being equal. If said fruit is sold or handled by a third party said mortgagor and lessor agree to pay to said mortgagee as liquidated damages five cents for each box of apples so sold or handled by or through a stranger to this agreement.

"It is further agreed, however, that said mortgagee shall pack all fruit.

"It is further agreed and understood that in case of damage or destruction of said crops, or any part thereof, by hail or otherwise, said mortgagee shall be released from making any further advances other than it sees fit, and as to that the decision of the mortgagee shall be absolute and final;"

and the third rider, attached to the form just over the second, bears the following, signed by plaintiff:

"I, the undersigned, the lessor of the within described property, hereby consent to the within and foregoing crop mortgage, this............day of May, 1930.

"Geo. W. Radford."

Pursuant to its agreement with Mr. Dietz, defendant advanced to him sums aggregating over two thousand dollars, and when the apples were ready to harvest, it elected to "handle" the entire crop instead of exercising its option to purchase the same. After storing, packing and selling the apples, it deducted the amounts due to it under its contract with Mr. Dietz, whereupon there remained in its possession a balance of $866.10, which amount defendant then turned over to Mr. Dietz.

Later, plaintiff instituted this action against defendant (Mr. Dietz having been thereafter brought in as an additional defendant), claiming under his statutory landlord's lien, and that, pursuant to Rem. Rev. Stat., § 1188-15, defendant had eloigned or rendered it difficult, uncertain or impossible to identify the apple crop, and had thereby prevented plaintiff from enforcing his landlord's lien thereon, plaintiff praying for judgment for the balance of rent due him under his lease. Defendant answered with denials, and pleaded that plaintiff had consented to the chattel mortgage executed in its favor by Mr. Dietz, and had agreed that defendant might purchase the crop or handle the same as it might elect, and that plaintiff, being fully advised as to the situation, was estopped to maintain any claim against defendant. Two small counterclaims against the rent were also pleaded, concerning which no question is raised.

Plaintiff having replied to the affirmative defense in the answer, the action was tried to the court sitting

without a jury, resulting in findings of fact and conclusions of law in plaintiff's favor. From a judgment pursuant thereto in the sum of $771.20, defendant Washington Fruit & Produce Company appeals.

Appellant concedes that respondent had under his lease a lien upon the crop to be grown upon the demised premises during the term, but argues that respondent, by affixing his signature to the rider attached to the chattel mortgage above referred to, lost his right to subsequently maintain a lien against the crop. Some question is raised as to whether or not respondent, by signing the rider which we have referred to as the third rider, bound himself by the language contained in the second rider. Appellant contends that the three riders were originally typed on one sheet of paper, but that, for convenience in preparing the mortgage, the three paragraphs were cut apart and separately pasted upon the printed form. For the purposes of this case, we assume that respondent is bound by the language contained within the two riders which we have referred to as the second and third. The first rider contained merely the description of the land.

By the agreement contained in rider number two, respondent and his tenant granted to appellant the option to buy the crop, "prices being equal," and also vested in appellant the right to "handle" the crop if it did not care to purchase the same. This latter right was that exercised by appellant. No rights of any third parties have intervened, the question to be decided concerning only the rights of parties to the contract.

▪ ██ Appellant contends that respondent gave his "express consent," within the meaning of Rem. Rev. Stat., § 1188-15, above referred to, to the handling of the apple crop by appellant, and that respondent thereby authorized appellant to settle with Mr. Dietz

for any balance remaining in appellant's hands after deducting its advances with interest; and that respondent therefore can not maintain this action.

In this connection, appellant argues that respondent, by his conduct, has waived his lien upon the apple crop. It is well settled that there is a presumption that one having a right to a lien has not waived it. In the case of *Gray v. Hickey,* 94 Wash. 370, 162 Pac. 564, this court, referring to a contract which the party claiming a lien had entered into and by which it was contended that the right to a lien had been waived, said:

"We do not construe this provision of the contract as a waiver of Gray's lien right for the work to be performed by him. It, in any event, is not a clear waiver of such right. The rule seems to be that, when the terms of the contract are ambiguous in this respect, they should be construed most favorably to the person claiming the lien right."

A somewhat similar question was presented in the case of *Wroten v. Robbins,* 103 Wash. 393, 174 Pac. 968, in which the court distinguished the case of *Anderson v. Tingley,* 24 Wash. 537, 64 Pac. 747, 85 Am. St. 959, holding that, in the older case, the lien had been waived by an agreement that the employer should sell certain logs upon which a lien had existed and receive the money therefor, and that the lien was waived by the agreement that the purchase price should be paid to the employer. In the *Wroten* case, the right of lien was sustained.

Referring to cases in which the right to maintain a lien had been lost, this court, in the case of *Adams v. Harvey,* 129 Wash. 483, 225 Pac. 407, used the following language:

"In several cases we have held that there was a waiver of the right of lien, but in each instance the

waiver was specific and no reasonable doubt could exist as to what was meant."

Language to the same effect is found in the decision of this court upholding the right to a lien in the case of *Davis v. Ship Lumber Mill Co.,* 132 Wash. 167, 231 Pac. 937. The cases of *Fouts v. Chicago Lumber Co.,* 134 Wash. 692, 236 Pac. 277, and *Tanksley v. Tanksley,* 170 Wash. 606, 17 P. (2d) 25, are also of interest in connection with this point.

Appellant contends that, if a landlord who has a lien upon a crop grown by his tenant consents to a sale of the crop by the tenant to a dealer, or agrees that the dealer may take possession of the crop and market it, the landlord waives his lien and can not recover against the dealer. In this connection, appellant cites several authorities, including the case of *Banning v. Livesley,* 87 Wash. 580, 152 Pac. 4. In that case, a judgment dismissing an action based upon an alleged eloignment of hops was by this court affirmed, it being held that the landlord had lost his lien. In considering the question, this court said:

"The only question involved in the appeal is whether or not Robert Livesley is liable to appellant as for an eloignment of the hops. The answer to this question, as here presented, depends upon whether or not appellant consented to the sale of the hops. The lower court found that she did, and upon such finding dismissed the action. It cannot be questioned but that a landlord who consents to the sale of a crop raised upon his land, before the payment of the rent, waives his statutory lien, and that when the landlord consents to such sale and receives part of its proceeds as rent with knowledge of the facts, it is a ratification of the sale and the lien is lost."

The court held that the landlord had consented to the sale of the hops, and under the circumstances re-

cited by the court in its opinion, it is clear that no responsibility as for an eloignment existed.

In the case at bar, respondent expressly consented to the subordination of his claim for rent to appellant's claim for advances. Appellant's advances have been repaid, and no question arises under that phase of the transaction. During the harvesting of the crop, respondent wrote to appellant asking for his rent, and under date October 23, 1930, appellant answered respondent's letter, referring to respondent's claim as a mortgage, advising him that some of the apples had been delivered, that others were then being received, and that information as to the pack would be forwarded later. This letter concludes, "As regards a check, we are unable to forward this to you, as this would be a matter between you and Mr. Dietz."

It clearly appears, then, that appellant was fully advised as to respondent's claim, and that respondent as late as October was still insisting upon receiving his money. While it is true that respondent should have at once informed appellant that he was demanding that appellant pay his claim after its own had been satisfied, the facts do not require a holding that respondent waived his right to a lien.

It can not be held that, by the writing which respondent signed, he waived his lien within the rule laid down by the authorities. Appellant was granted the right to buy the crop or in the alternative to handle the same, "prices being equal." Mr. Dietz had, of course, the right to sell the crop subject to respondent's lien, and in order that appellant might be protected in its advances, it was, of course, necessary that respondent concede precedence. This rendered respondent's participation in the transaction necessary, but we agree with the trial court in holding that nothing which was done requires a holding, against the

strong presumption to the contrary, that respondent, as against appellant, has waived his right of lien.

Judgment affirmed.

BLAKE, TOLMAN, HOLCOMB, and GERAGHTY, JJ., concur.